[Civ. No. 57556. Second Dist., Div. One. Nov. 17, 1980.]

RICHARD WALTER BEGGERLY, Plaintiff and Appellant, v. JOSEPH GBUR et al., Defendants and Respondents.

**COUNSEL**

Silver & Walshin for Plaintiff and Appellant.

Cohen, England, Whitfield & Osborne and Robert A. McSorley for Defendants and Respondents.

OPINION

JEFFERSON (Bernard), Acting P. J.*—Plaintiff Richard Beggerly brought this action against defendants Joseph Gbur and John Morris for damages for anticipatory breach of an oral contract in failing to pay commissions allegedly due plaintiff in connection with the sale of the Wood Ranch in Ventura County. At the conclusion of plaintiff's case in chief, in a trial by the court without a jury, the court granted defendants' motion for judgment pursuant to section 631.8 of the Code of Civil Procedure. Thereafter, findings of fact, conclusions of law and judgment were made and entered accordingly. Plaintiff appeals from the judgment.[1]

I

*The Factual Background*

On September 21, 1976, Beggerly, as salesperson, and Gbur, as broker, doing business as Home Realty, entered into a written "Broker-Salesperson Contract" wherein Gbur agreed, at Beggerly's request, to make available to Beggerly all current listings in the Home Realty office in Thousand Oaks, to provide Beggerly with use of the facilities of the office, and to furnish such advice as Beggerly shall desire; and Beggerly agreed "to perform no other activities in association with Broker, except to solicit and obtain listings and sales, rentals, or leases of property for the parties' mutual benefit,..."

The written contract provided further that broker's usual and customary commissions shall be charged to the parties for whom the services are performed, and that "[w]hen Salesperson shall have performed any work hereunder whereby any commission shall be earned and when such commission shall have been collected, Salesperson shall be entitled to a share of such commission as determined by the current commission schedule set forth in Broker's written policy, except as may otherwise be agreed in writing by Broker and Salesperson before completion of any particular transaction." The current commission schedule provided for the following division of commissions: Selling or listing

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1]Alleged causes of action for declaratory relief, constructive trust, and injunctive relief were dismissed on plaintiff's motion. Upon defendants' motion, the complaint was dismissed as to defendants other than Gbur and Morris; the matter then proceeded to trial on the alleged cause of action for damages for anticipatory breach of oral contract by Gbur and Morris.

salesman (co-op transaction), 25 percent; selling salesman (in-house transaction), 35 percent; listing salesman (in-house transaction), 30 percent.[2]

With respect to the operation of the written contract, plaintiff testified that if an outside broker were involved with Home Realty in a sale, the commission would be divided equally between that broker and Home, and Home's one-half would then be divided among salespersons in the office involved in the sale. Plaintiff said that selling real estate was not his only occupation.[3] Plaintiff explained that in the beginning he had "floor time"—which means that he worked in the office about four hours a day two or three days a week on a rotating basis. In February 1977, defendant Gbur removed him from floor time. He told Gbur that this arrangement was fine with him because he did not want to be into residential sales, he just wanted to be in land sales so that he could tend bar to make a living. Gbur said that would be fine.

## II

### The Testimony Regarding the Alleged Oral Modification Contract

Plaintiff sought to testify further that, as part of his conversation with defendant Gbur regarding the change in floor time, an oral agreement was reached. Gbur interposed an objection to such testimony on the ground that such testimony tended to prove the making of an oral modification of a written agreement in violation of the provisions of section 1698 of the Civil Code. In support of the objection Gbur argued that there was no new consideration for the claimed oral agreement, the oral agreement was not executed, and the written contract expressly precluded any oral modification. The court overruled the objection and permitted the testimony subject to a subsequent motion to strike.

Plaintiff then testified that during the conversation, he offered to use his efforts to bring land listings to Gbur; that Gbur expressed satisfaction with this proposal; that Gbur said that he (Gbur) would try to find a buyer and, if plaintiff found a buyer, plaintiff would share in the

---

[2]The written contract and the then current commission schedule were received in evidence without objection.

[3]On voir dire regarding foundation for his expertise in real estate sales, he testified that his primary income in 1976, 1977, and 1978 was from his occupation as a bartender; he did not obtain any written real estate listing in those years; and he was "procuring seller" in only one real estate transaction in those years.

commission "50/50" with Gbur and that they both might make some money. Plaintiff further testified that he and Gbur were the only persons present at this conversation and that the oral agreement was never confirmed in writing.

Plaintiff testified that in the next few weeks following the initial conversation with Gbur he stopped by the office two or three times a week and brought information to Gbur concerning two properties referred to as the Stratharn Ranch and the Mulholland parcel. Gbur said he did not have the time to consider these properties and suggested that plaintiff negotiate with another salesman in the office—defendant Morris— and they would split any money that came into Home among the three of them. Plaintiff said he spoke to Morris and gave Morris the information as to the two properties. Morris suggested that any commission be split four ways so as to include a broker with whom Morris was dealing in a property in Capistrano. In the conversation with defendant Morris, Morris "brought up" the subject of the Wood Ranch, stating that Morris had heard from Gary Fallon that the Wood Ranch was for sale and that Morris was trying to get information as to the terms of sale.

Plaintiff also testified that in early July 1977, while he and a friend were driving by the Wood Ranch, the friend said that it was for sale and that information about it could be obtained from Ralph Mahan, a realtor in Thousand Oaks. Plaintiff said that he told the friend that he—the plaintiff—would have to find a buyer if he was to participate in the commission. Plaintiff telephoned Mahan and told him that Morris had a Canadian group that was interested in purchasing land in the Thousand Oaks area, and asked Mahan for information about the Wood Ranch. Plaintiff went to Mahan's office, which was across the street from DuPar's Restaurant where plaintiff was working as a bartender, and Mahan wrote information on a piece of paper (exhibit 2) and gave the paper to him.[4] Plaintiff then telephoned Morris; Morris came to the bar in DuPar's Restaurant; plaintiff permitted Morris to copy the information on the paper, and told Morris that the information

---

[4]Exhibit 2 is a piece of paper upon which the following words and figures are written: "4,300 Acres
"$5,250,00
"20% down
"3 yr. Terms
"Ralph Mahan
"497-2725
"Wood Ranch"

was given confidentially. A few days later plaintiff introduced Mahan to Morris at the bar in DuPar's Restaurant.

Plaintiff said that he next heard about the Wood Ranch in September or October 1977, when Fallon came into a barroom where plaintiff was working in Sunset Hills and said that Morris wanted to contact him about a property that had been sold. He telephoned Morris, and Morris said that the Wood Ranch had been sold, that Home Realty was receiving a $100,000 commission, and that plaintiff should see Gbur. He went to see Gbur. Gbur referred him to a memorandum (exhibit 3) dated November 8, 1977, from Gbur to Morris.[5]

Mahan, a real estate broker, was called as a witness by plaintiff and testified to certain facts regarding real estate transactions. Thus, Mahan explained that an "open listing" means that a property is listed with more than one broker.[6] In order to be valid, an open listing must be in writing; however, in large properties such as the Wood Ranch, open listings are customarily given orally to more than one broker, consisting sometimes of merely acreage and price. When an oral open listing is given to a broker, the only protection the broker has as to commission is "the faith of the parties you're dealing with." Whether an open listing is oral or written, a broker gets a commission if he brings in a buyer.

Mahan said that he could not have given plaintiff or anyone else an open listing on the Wood Ranch because such listing could only have been given by the owner of the property or someone who had power to give it, and Mahan did not have such power. Mahan stated that the Wood Ranch had been "on and off the market over the years." He recalled that while he was having a drink at DuPar's Restaurant, plaintiff, who was bartending, approached him and asked him whether he knew anything about the Wood Ranch. He replied that it had "just come back on the market." Plaintiff asked him the price and terms. The

---

[5]Gbur's memorandum (exhibit 3) states in part that Mahan did not have a factually quoted price on the property or an agreement from the seller to pay commission; Gbur had known and dealt with Mahan for the past 15 years; Gbur had information on the Wood Ranch in his files since 1965 and had been on the ranch with Mr. Wood prior to his death; plaintiff did not present any constructive factual information to Morris except that Morris should call Mahan; Morris called Mahan on his (Morris') own, and Mahan sent information to Morris in August 1977; the information was not current and Mahan did not have a commission agreement at that time; there was no bona fide price or any agreement to pay commissions until Gbur and Mahan went to Santa Barbara and arranged for same with the seller's representatives.

[6]It was stipulated that Mr. Mahan was an expert on real estate matters in Ventura County.

price and terms were not secret, and there was no confidential relationship between him and plaintiff. He gave plaintiff information about the Wood Ranch, and he wrote the information on exhibit 2.

The Wood Ranch was sold to Omega Corporation, a buyer procured by Kling Realty, in July 1978, for $6.6 million. Home Realty received a commission of $120,000 which was divided equally between Gbur, the broker, and Morris, a salesman for Gbur.

Mahan further testified that plaintiff's participation in sale of the Wood Ranch was limited to passing on information from Mahan to another broker. In Mahan's opinion, this was the same as Morris' participation therein.

As we have set forth previously herein, at the close of plaintiff's case in chief, the court granted defendant's motion to strike all of plaintiff's evidence relating to an alleged oral modification of the written contract. In so doing, the court relied on the grounds asserted by defendants. In addition, the trial court granted defendants' motion for judgment—made pursuant to section 631.8 of the Code of Civil Procedure.[7]

### III

*The Trial Court Did Not Commit Error in*
*Granting Defendants' Motion to Strike*
*Plaintiff's Evidence of an Alleged*
*Oral Modification of the*
*Written Contract*

In support of his contention that the trial court erred in granting the motion to strike evidence of the purported oral modification of the writ-

---

[7]Said section 631.8 provides as follows: "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634 of this Code, or may decline to render any judgment until the close of all the evidence. The court may consider all evidence received, provided, however, that the party against whom the motion for judgment has been made shall have had an opportunity to present additional evidence to rebut evidence received during the presentation of evidence deemed by the presenting party to have been adverse to him, and to rehabilitate the testimony of a witness whose credibility has been attacked by the moving party. Such motion may also be made and granted as to any cross-complaint. [¶] If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment operates as an adjudication upon the merits."

ten contract, appellant argues that (1) the provisions of the written contract did not preclude oral modification thereof, (2) the oral modification was supported by adequate consideration, and (3) the oral modification was executed.

Section 1698 of the Civil Code, as amended in 1976, provides in part: "(a) A contract in writing may be modified by a contract in writing. [¶] (b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties. [¶] (c) Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration. The statute of frauds (Section 1624) is required to be satisfied if the contract as modified is within its provisions...."

Preliminarily, we note that in the trial court defendants moved to strike the oral modification of the written contract "as violative of the parole [*sic*] evidence rule, as violative of the rule that's now set forth in Civil Code section 1698 that precludes any oral modification of a written contract." ■ The parol evidence rule precludes extrinsic evidence of *prior* or *contemporaneous* agreements that contradict, vary, or add to an integrated writing—it does not relate to *future* agreements and does not bar extrinsic evidence that proves that the parties *subsequently* modified their *integrated* writing. (Jefferson, Cal. Evidence Benchbook (1972) Parol Evidence Rule, § 32.6, p. 582.) Here, plaintiff sought to prove subsequent oral modification of an integrated written contract, thus giving rise to application of Civil Code section 1698. (*Id.*)

We also note, as do the parties, that there was "some confusion," as to the effective date of present section 1698 of the Civil Code (which was added in 1976 upon repeal of former § 1698)[8] relative to the date of the written contract herein—September 21, 1976—especially as to present subdivision (c) of section 1698. We view the matter of the effective date of present section 1698 as being immaterial insofar as its applicability to the circumstances in the instant case is concerned. This result follows because subdivisions (a) and (b) thereof "continue the substance of former Section 1698," and subdivision (c) thereof "retains the requirement of the rule in D.L. Godbey & Sons Construction Co. v. Deane, 39 Cal.2d 429, 246 P.2d 946 (1952), that the oral modification be supported by new consideration." (Law Revision Com. com.,

---

[8]Former section 1698 provided: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement and not otherwise." (West's Anno. Codes (1973) Civ. Code, § 1698.)

West's Anno. Codes (1980 supp.) Civ. Code, § 1698, p. 58.) "However, the requirement in Godbey that the party seeking enforcement of the oral modification must have executed his part of the agreement is not continued." (*Id.*) Thus, if there is new consideration for the subsequent oral modification agreement, there is no requirement that either party must have executed his part of such oral agreement. (Jefferson, Cal. Evidence Benchbook, *supra* (1978 Supp.) § 32.6, pp. 391-392.)

In the case before us the written contract expressly provided that when the salesperson (here, the plaintiff) shall have performed any work thereunder whereby any commission shall be earned and collected, the salesperson shall be entitled to a share of such commission in accordance with the current commission schedule, *"except as may otherwise be agreed in writing by Broker and Salesperson before completion of any particular transaction."* (Italics added.)

■ It is readily apparent from the specific provisions first mentioned, that the written agreement expressed a clear intent to preclude oral modification of the kind claimed by plaintiff—a modification which directly contradicted the terms of the written contract. In addition, whereas the written contract and the attendant commission schedule provided that plaintiff was to work diligently to sell, lease or rent any and all real property and solicit additional listings and customers for a commission of 25 percent, the claimed oral modification provided that, in order to permit plaintiff to tend bar to make a living, he would deal in land sales only and not in residential sales, and receive for his efforts 50 percent of the commission.[9] The trial court could properly determine that, within the meaning of subdivision (c) of Civil Code section 1698, the written contract expressly precluded such an oral modification of the written agreement.

---

[9]It is to be noted that the facts herein are distinguishable from the facts in *James G. Freeman & Associates, Inc. v. Tanner* (1976) 56 Cal.App.3d 1 [128 Cal.Rptr. 109]. There, section 1698 was not asserted as a defense; and the trial court did not base its findings and conclusions on oral modification of a prior written agreement. Rather, it found that the *contemporaneous* oral agreement consisted of the written document and an agreement to redraft a paragraph thereof. The court held that parol evidence may be admitted to prove the elements of an agreement not reduced to writing so long as the parties have not intended the writing to be complete and final embodiment of their agreement and the parol evidence does not contradict the terms of the writing. In contrast, plaintiff in the instant case sought to prove a *subsequent* oral modification of a

We also hold that the trial court could properly determine that the alleged oral modification of the written agreement was invalid and ineffective because it lacked being supported by *new* consideration within the meaning of subdivision (c) of section 1698 of the Civil Code. (See *Godbey, supra,* 39 Cal.2d 429.)

Plaintiff advances the contention that his performance alone suffices to render the oral modification "executed" within the meaning of Civil Code section 1698. He cites *Raedeke* v. *Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 673 [111 Cal.Rptr. 693, 517 P.2d 1157], as support for this contention. There it was said: "We have held that if there exists sufficient consideration for an oral modification agreement, then full performance by the promisee alone would suffice to render the agreement 'executed' within the meaning of section 1698. [Citations.] In the absence of consideration,a gratuitous oral promise…ordinarily would be unenforceable under section 1698." The *Raedeke* case, however, does not support plaintiff's position. The record before us establishes that there is an absence of consideration for the defendants' alleged promises. These promises, therefore, are simply gratuitous oral promises.

In light of our discussion of the issues presented, we conclude that the trial court did not commit error in granting the motion to strike evidence of the claimed oral modification of the written contract.

## IV

### *The Trial Court Did Not Commit Error in Denying a Hearing on Plaintiff's Request for Special Findings*

Plaintiff objected to the proposed findings of fact, and requested special findings. The court made written findings of fact as follows: "1. Plaintiff and defendant Joseph Gbur, doing business as Home Realty, entered into a written Broker-Salesperson contract on September 21,

---

completed written contract under which the parties had performed before the alleged oral modification was made; and evidence of such oral modification was stricken because of the provisions of section 1698 of the Civil Code.

1976 which states the terms and conditions of plaintiff's status as a real estate salesperson. [¶] 2. Plaintiff and defendants did not enter into a contract to equally share commissions if plaintiff disclosed the availability of real property for sale or disclosed leads on parcels of real property. [¶] 3. Defendants Gbur and Morris learned from a person other than plaintiff that the real property known as the Wood Ranch was for sale. [¶] 4. Any information plaintiff may have supplied either defendants Gbur or Morris regarding the Wood Ranch as to its location and size, the price and terms of sale or the listing broker was well known at the time among realtors in the Conejo Valley. [¶] 5. At no time did plaintiff obtain an exclusive or open listing on the Wood Ranch. [¶] 6. Plaintiff did not participate in any negotiations resulting in the sale of the Wood Ranch and was not a procuring cause of that sale. [¶] 7. Plaintiff did not receive a share of the commission received by defendants Gbur and Morris on the sale of the Wood Ranch."

The following conclusions of law were made by the trial court: "1. Plaintiff and defendants Gbur and Morris did not enter into an oral agreement modifying the terms of the written Broker-Salesperson contract pertaining to the payment of commissions to plaintiff. [¶] 2. Plaintiff is not entitled to a share of commissions received by defendants Gbur and Morris on the sale of the Wood Ranch in exchange for providing information already known to one or both of said defendants or readily available to them. [¶] 3. Defendants Gbur and Morris have no legal obligation to pay plaintiff a share of the commission they received on the sale of the Wood Ranch. [¶] 4. Plaintiff was not a procuring cause of the Wood Ranch sale. [¶] 5. Defendant Gbur did not breach a contract with plaintiff. [¶] 6. Plaintiff did not have any contract with defendant Morris."

Plaintiff advances the contention that the trial court erred in not granting a hearing on his objections to the proposed findings and on his request for special findings. Plaintiff asserts that of the seven findings of fact made by the trial court, plaintiff seriously disputed only the finding in paragraph 2 of the findings that plaintiff and defendant had *not* entered into a contract to share commissions equally.

Plaintiff asserts that a hearing on his objections to the proposed findings and on his request for special findings would have enabled plaintiff to obtain a determination of the rationale used by the trial court in granting defendants' motion to strike the evidence introduced by plain-

tiff to support the claim of a subsequent oral contract that modified the written agreement. The record below indicates that the motion to strike was granted without the trial court stating any reasons therefor. But defendant Gbur had predicated his motion to strike on three grounds authorized by the provisions of Civil Code section 1698: (1) there was no new consideration for Gbur's oral promise; (2) there was no evidence that the oral modification was a completed transaction; and (3) the written agreement precluded any oral modifications thereof.

It is manifestly clear that, in view of the grounds urged by defendant Gbur to support his motion to strike, the trial court's action in granting the motion was based on one or more of the three grounds urged to support the motions. It is doubtful if a hearing on the proposed findings and on plaintiff's request for special findings would have produced any additional elucidation of the trial court's rationale.

■ The law relating to hearings on findings is set forth in rule 232 of the California Rules of Court. Subdivision (f) of rule 232 provides: "The court *may*, on the motion of any party who appeared at the trial or on its motion, order a hearing on objections to the proposed findings,. . ." (Italics added.) The plain language of subdivision (f) makes it abundantly clear that "it is within the discretion of the trial court to order a hearing on objections to proposed findings and conclusions (Cal. Rules of Court, rule 232(f)); it is *not* mandatory." (*Whitman* v. *Board of Supervisors* (1979) 88 Cal.App.3d. 397, 417 [151 Cal.Rptr. 866].) (Italics added.)

It follows that the trial court did not abuse its discretion in not granting a hearing on plaintiff's objections to proposed findings or his request for special findings. It is significant that the finding in paragraph 2 of the findings—that no oral agreement for sharing of commissions was made—was compelled by the evidentiary situation remaining after all evidence pertaining to such an *oral* agreement had been stricken. The evidence remaining certainly supported this finding. No finding to the contrary would have been supportable by any evidence remaining before the court.

We have indicated previously herein that defendant Gbur's motion to strike the evidence pertaining to an alleged *oral* modification agreement was properly granted by the trial court. The evidence remaining at the

close of plaintiff's case in chief amply supported the findings of fact and conclusions of law reached by the court and the judgment made and entered pursuant to section 631.8 of the Code of Civil Procedure.

The judgment is affirmed.

Lillie, J., and Rimerman, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.