[No. A024198. First Dist., Div. Two. June 30, 1986.]

ROBERT MARANI, Plaintiff, Cross-defendant and Appellant, v. KEITH WALKER JACKSON, Defendant, Cross-complainant and Appellant.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, the opinion is certified for partial publication with the exception of the cross-complaint and parts II, III and IV.

**COUNSEL**

John E. Virga, Ray J. Scott and John S. Sargetis for Plaintiff, Cross-defendant and Appellant.

Moses Lasky, D. Scott Macrae and Lasky, Haas, Cohler & Munter as Amici Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Tony J. Tanke, Mazer & Tanke and Susan Burnett Luten for Defendant, Cross-complainant and Appellant.

**OPINION**

**KLINE, P. J.—**

### STATEMENT OF THE CASE

Plaintiff and respondent, Robert P. Marani (Marani), was a licensed real

estate salesperson employed from February 1977 to July 1977 by defendant and appellant, Keith Walker Jackson (Jackson), a real estate broker. Marani brought an action against Jackson in the Santa Cruz County Superior Court seeking recovery of a share of a real estate brokerage commission earned by Jackson from the sale of a parcel of real property known as Canon del Sol. Jackson cross-complained against Marani for breach of contract and fraud alleging that Marani, while working as Jackson's agent, and without Jackson's knowledge or consent, entered into a secret agreement with the owners of Canon del Sol that allowed Marani to collect a personal commission of $197,500 on the sale of the property.

The trial court found in favor of Marani on his complaint and on the cross-complaint. Judgment was entered in his favor and against Jackson for $69,276.63, plus prejudgment interest from January 24, 1983, attorneys' fees of $8,400 and costs of $1,674.99.

Jackson filed posttrial motions, including petitions to vacate judgment and for new trial and a motion to tax costs. The superior court struck the award of attorneys' fees from the judgment, but otherwise denied those motions.

Jackson has appealed from the judgment. Marani has cross-appealed from the order striking the award of attorneys' fees.

FACTS

*The Complaint*

Marani had been a land use consultant for approximately 13 years prior to the date of trial. Marani had gained a reputation as an effective land-use consultant in Santa Cruz due to his successful efforts in securing various government agencies' approvals for the Deer Park project, a controversial project in the Santa Cruz area. Marani's excellent reputation, the contacts he had made through his role as a land-use consultant and involvement in other projects, and his corresponding ability to bring listings from the Deer Park shopping center and other projects to Jackson's realty office, motivated Jackson to urge Marani to obtain a real estate salesman's license and place that license in Jackson's office. In February 1977 Marani did obtain his real estate salesman's license and he placed that license with Jackson. At that time Marani and Jackson executed the California Association of Realtors standard form broker-salesperson contract as required by California real estate law. (Cal. Admin. Code, tit. 10, § 2726.) Under the terms of the contract, Marani was to work for Jackson as Jackson's agent in soliciting and obtaining listings and in making sales of real property. In exchange,

Marani was to receive a specified share of the real estate commissions earned by Jackson on terms and conditions specified in detail in the contract.

For example, Marani was entitled to a specified percentage share of Jackson's commission "based upon commissions actually collected from each firm listing solicited and obtained by [Marani]." The percentage to be shared was set out in Jackson's written policy and depended upon the type of listing upon which Jackson collected his commission. If Marani solicited and obtained an "exclusive right to sell listing" (i.e., a listing under which only Jackson and no one else could sell the property), he would receive 25 percent of Jackson's commission on a sale under the listing. If the listing was open or nonexclusive, he would receive 15 percent.

The contract provided that Jackson's commission policy could not be changed except by a written agreement signed by Jackson and Marani before a sale was completed.[1]

It is unclear whether the oral agreement upon which the court based its award to Marani occurred prior to the time Marani obtained his license and commenced work as an independent contractor for Jackson or after Marani began work and had signed the contract. Marani insists that the oral agreement preceded the written contract. On the other hand, the trial court's statement of decision appears to find that the oral agreement came after the parties executed the written agreement. The court found: "In early 1977, plaintiff [Marani] secured a real estate salesman's license and 'placed it' with defendant [Jackson], a real estate broker. Plaintiff then induced owner to list the property with defendant. . . . At that time, defendant orally promised plaintiff that if he sold the property at any time in the future and secured a commission, he would share the commission 50-50 with plaintiff. That promise was reaffirmed repeatedly. ■ ■ ■ ■ It is supported by consideration and not unenforceable under the Statute of Frauds."[2]

---

[1] Paragraph 5 provided in pertinent part: "When Salesperson shall have performed any work hereunder whereby any commission shall be earned and when such commission shall have been collected, Salesperson shall be entitled to a share of such commission as determined by the current commission schedule set forth in Broker's written policy, except as may otherwise be agreed in writing by Broker and Salesperson before completion of any particular transaction."

[2] The timing of the oral agreement is important as "[t]he parol evidence rule precludes extrinsic evidence of *prior* or *contemporaneous* agreements that contradict, vary, or add to an integrated writing—it does not relate to *future* agreements and does not bar extrinsic evidence that proves that the parties *subsequently* modified their *integrated* writing. (Jefferson, Cal. Evidence Benchbook (1972) Parol Evidence Rule, § 32.6, p. 582.)" (*Beggerly* v. *Gbur* (1980) 112 Cal.App.3d 180, 188 [169 Cal.Rptr. 166], italics in original.) Use of extrinsic evidence to prove subsequent oral modification of an integrated written contract is governed by Civil Code section 1698. (*Id.*)

We shall discuss the parol evidence rule because the parties expend much argument on it and, more importantly, because Marani's testimony, though no model of clarity, seems to establish that the oral agreement *predated* the written contract, contrary to the court's finding.

Shortly after he began working for Jackson, Marani obtained a 90-day exclusive listing on the Canon del Sol property for Jackson. The written listing agreement between Jackson and Oceanview Investors, the owners of the property, was entered into on March 14, 1977 and expired on July 5, 1977. Under its terms, Jackson earned a 10 percent commission if he was able to sell Canon del Sol before the listing expired.

Jackson was not able to find a buyer for the property during the term of the listing.[3]

Marani left his employment with Jackson in July of 1977 after the exclusive listing expired and commenced work as a salesperson for another real estate broker.

Almost three years after the exclusive listing had expired and Marani had left Jackson's office, the owners of Canon del Sol wrote directly to Jackson, soliciting his services and authorizing him to seek offers to purchase the property on a nonexclusive, or open, basis for a price of $2.7 million.

Jackson obtained a buyer, Thomas Burke Enterprises (Burke), which agreed to purchase Canon del Sol on February 8, 1980. The sale became final on June 24, 1980 and Jackson earned and collected a commission of $250,000. Jackson waived one-third of his commission in favor of Burke as a gesture of appreciation and in the hope Burke would give him the listing on a future Canon del Sol condominium project.

After the sale, Marani attempted to obtain information from Jackson as to when and how much Jackson intended to pay him. At various times Jackson told other people that he would "take care" of Marani or that he would "probably" give Marani something. He ultimately refused to pay Marani anything. The court found Jackson's refusal to share the commission constituted breach of contract. The court further found that the one-third share of the commission that Jackson had given Burke was to be deducted solely from Jackson's share of the commission as Marani had neither been consulted nor would benefit from the payment.

*The Cross-complaint**

. . . . . . . . . . . . . . . . . . . . . .

---

[3]Jackson did obtain a first option on Canon del Sol for a prospective buyer named L.B. Nelson Corporation on June 6, 1977, which expired by its terms on November 30, 1977, without a sale. L.B. Nelson also received a second option on the property on May 15, 1978 which also expired without a sale in December 1979.

*See footnote, *ante,* page 695.

## I.

### THE COURT ERRED IN FINDING FOR MARANI ON THE COMPLAINT

A. *Assuming the oral agreement predated the written contract, the court erred in admitting evidence of the oral agreement in violation of the parol evidence rule.*

During the trial, counsel for Jackson raised a continuing objection based on the parol evidence rule to admission of any testimony concerning the oral agreement. The court overruled the objection concluding, in effect, that the written contract was not an integrated writing and that the oral commission agreement did not contradict the terms of the written contract.[5]

We must disagree on both counts. In California, the parol evidence rule is codified in Civil Code section 1625, and Code of Civil Procedure section 1856. Civil Code section 1625 provides as follows: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Code of Civil Procedure section 1856 provides: "(a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. [¶] (b) The terms set forth in a writing described in subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement."[6]

The parol evidence rule is not merely a rule of evidence excluding precontractual discussions for lack of credibility or reliability. It is a rule of substantive law making the integrated written agreement of the parties their exclusive and binding contract *no matter how persuasive the evidence* of additional oral understandings. Such evidence is legally irrelevant and cannot support a judgment. (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 32.1, pp. 1122-1123.)

---

[5]The court initially overruled the objection stating that under *Masterson* v. *Sine* (1968) 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561], "I cannot state that if an agreement had been made between Jackson and Marani for the sharing of commissions, it would certainly have been included in this writing." At a later point, the court with reference to the commission split also stated: "But the agreements are silent, you see, and therefore, you cannot, under the parol evidence rule, state that the agreement is inconsistent with a verbal agreement."

[6]Here, there was no contention that the extrinsic evidence was admitted to explain the written contract. Marani did not seek recovery under the written contract, nor did the court grant judgment on the written contract.

■ "In its actual application the rule is, however, limited to those cases where the parties intended the writing to be complete unto itself. In *Masterson* v. *Sine,* 68 Cal.2d 222, 225 . . ., the court said: 'When the parties to a written contract have agreed to it as an "integration"—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms. [Citations.] When only part of the agreement is integrated, the same rule applies to that part, but parol evidence may be used to prove elements of the agreement not reduced to writing. [Citations.] [¶] *'The crucial issue in determining whether there has been an integration is whether the parties intended their writings to serve as the exclusive embodiment of their agreement.'* (Italics added.)" (*Salyer Grain & Milling Co.* v. *Henson* (1970) 13 Cal.App.3d 493, 498 [91 Cal.Rptr. 847].)[7]

"In ruling on the matter of parol evidence and the preliminary issue of integration, a court must consider such factors as the language and completeness of the written agreement and whether it contains an integration clause, the terms of the alleged oral agreement and whether they contradict those in the writing, whether the oral agreement might naturally be made as a separate agreement, and whether the jury might be misled by the introduction of the parol testimony. (*Brawthen* v. *H & R Block, Inc.* (1975) 52 Cal.App.3d 139, 146 . . . .) A court also considers the circumstances surrounding the transaction and its subject matter, nature and object. (*Id.,* at pp. 146-147.)" (*Mobil Oil Corp.* v. *Rossi* (1982) 138 Cal.App.3d 256, 266 [187 Cal.Rptr. 845]; see *Masterson* v. *Sine, supra,* 68 Cal.2d 222; *American Nat. Ins. Co.* v. *Continental Parking Corp.* (1974) 42 Cal.App.3d 260, 264-266 [116 Cal.Rptr. 801]; 2 Jefferson, Cal. Evidence Benchbook, *supra,* § 32.1, pp. 1126-1127.)

■ We are convinced that the collateral oral agreement claimed by Marani contradicts the terms of the written contract which sets forth in detail the commission schedule. Jackson accurately catalogues those contradictions as follows: "*First,* MARANI claims that his oral agreement entitles him to a perpetual listing commission, i.e., a share in JACKSON's commission whenever or however certain types of properties are sold. In direct contrast, the contract provides for a listing commission *only if* MARANI actually

---

[7]There is some question whether the integration issue is determined as a matter of law (*Brawthen* v. *H & R Block, Inc.* (1972) 28 Cal.App.3d 131, 137 [104 Cal.Rptr. 486]) or as a question of fact. (*Sherman* v. *Mutual Benefit Life Ins. Co.* (9th Cir. 1980) 633 F.2d 782.) The dispute need not be resolved here as the trial court's determination on the integration issue, even if viewed with the deference due trial court factual findings, was clearly erroneous and is unsupported by substantial evidence.

solicited or obtained the listing resulting in the sale. (Broker-Salesperson Contract, ¶ 11.) [¶] *Second,* MARANI's so-called agreement entitles him to a 'listing commission' or 'share' (which he defined as 25%) of the total commission regardless of the type of listing under which it is sold. In contrast, the contract provides for a different commission share depending on the *type* of listing (i.e., exclusive or non-exclusive) obtained by the salesperson. (*Id.,* ¶¶ 5, 11 and Commission Plan, I.) [¶] *Third,* MARANI claims that his purported agreement provides for payment of his share regardless of the status of his employment with JACKSON at the time of payment. In contrast, the written contract provides for a share after termination only if a sale is made based on a listing obtained by him during his employment by JACKSON. (*Id.,* ¶ 13.) [¶] *Fourth,* MARANI claims that the oral agreement entitles him to payment of a listing commission on certain types of properties independent of and in addition to any commission due under the Broker-Salesperson contract. In contrast, the written contract provides that compensation paid under its terms is the 'only remuneration' MARANI can receive from JACKSON. (*Id.,* ¶¶ 5, 7, 8.) [¶] The contract itself shows that the parties intended it to be the exclusive statement of their agreement. It specifically prohibits oral understandings regarding commissions. The contract provides that: 'Salesperson shall be entitled to a share of such commission as determined by the current commission schedule set forth in Broker's written policy *except as may otherwise be agreed in writing by Broker and Salesperson before completion of any particular transaction.'* (*Id.,* ¶ 5.) [Emphasis supplied.]''

Because these terms are covered so explicitly and so extensively in the written contract, we conclude they would *not naturally* be made as a separate oral agreement and that any other agreement would *certainly* have been included in the written instrument. (See, e.g., *Masterson* v. *Sine, supra,* 68 Cal.2d 222, 227-228; 2 Jefferson, Cal. Evidence Benchbook, *supra,* p. 1126.)

Marani argues that the written contract was a form document, its terms mere boilerplate and not open to easy alteration or incorporation of additional terms. Thus, he suggests a collateral oral agreement was likely. He further argues that the uniqueness and importance of the Canon del Sol property give credence to the court's conclusion that the document was not intended to be an integration. Jefferson does state that "the more formal the written instrument, the more likely it is that collateral terms would be made separately. Certain formal documents, such as deeds, do not lend themselves to incorporation of additional terms." (2 Jefferson, Cal. Evidence Benchbook, *supra,* Parol Evidence Rule, § 32.1, p. 1127.) Nevertheless, the standard form agreement here is substantially different from the type of

deed discussed by Jefferson. The printed contract, adopted by CAR, is a mere two pages long and easily read. More importantly, the Commission Plan is attached to that document, belying Marani's argument that terms could not easily be added thereto. Also buttressing our determination that the parties intended an integrated agreement is the fact that Marani did include additional special and detailed terms in an addendum to his subsequent Broker-Salesperson agreement between himself and broker Dan Plies. Marani was a sophisticated real estate consultant with substantial experience when he contracted with Jackson. The parties dealt at arms length. It stretches credulity to argue that Marani could not have amended the commission terms of the written contract to reflect the purported oral agreement. (See *Salyer Grain & Milling Co.* v. *Henson, supra,* 13 Cal.App.3d 493, 501; *Mobil Oil Corp.* v. *Rossi, supra,* 138 Cal.App.3d 256, 267.) The asserted unique nature and special importance of Canon del Sol in our view make it even more likely that the parties would have memorialized any additional or collateral understanding in the Broker-Salesperson Contract.

B. *The court erred in admitting evidence of the claimed oral agreement to modify the written contract.*

As earlier noted, the trial court apparently viewed the oral agreement as modifying the written contract, as witnessed by its reference to consideration. We conclude that Civil Code section 1698 precludes modification of the written contract by the oral agreement in this case.

Section 1698 of the Civil Code, as amended in 1976, provides in part: "(a) A contract in writing may be modified by a contract in writing. [¶] (b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties. [¶] (c) Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration. The statute of frauds (Section 1624) is required to be satisfied if the contract as modified is within its provisions. . . ." As Jefferson paraphrases the rule: "A contract in writing may be subsequently modified by an oral agreement only if (i) *the written contract does not contain an express provision requiring that modification be in writing*; and (ii) such oral agreement has been performed by the parties, which may consist of full performance by one party only to the oral agreement, or, as an executory oral agreement, is supported by a new consideration." (2 Jefferson, *supra,* § 32.5, p. 1162, italics added.)

We believe the Court of Appeal opinion *Beggerly* v. *Gbur, supra,* 112 Cal.App.3d 180, is directly on point. The essential facts of *Beggerly* are virtually indistinguishable from those presented here. In *Beggerly,* the plaintiff salesman and defendant broker entered a contract such as the

standard form broker-salesperson contract here, providing a 25 percent commission on sales procured by plaintiff, "*except as may otherwise be agreed in writing by Broker and Salesperson before completion of any particular transaction.*" (*Id.,* at p. 189.) Plaintiff sued defendant claiming he was entitled to 50 percent of a $120,000 commission on sale of land made by defendant to a buyer found by plaintiff. At trial, plaintiff sought to testify that, before the $120,000 commission transaction, he and defendant made an oral agreement to modify the written broker-salesperson contract to the extent that plaintiff would work on land sales only thereafter and plaintiff and defendant would share in the commission "50/50" on any sales to a buyer found by plaintiff.

The trial court granted defendant's motion to strike plaintiff's testimony as to the oral agreement. The Court of Appeal affirmed. Because we view *Beggerly* as dispositive, we quote extensively from that opinion: "In the case before us the written contract expressly provided that when the salesperson (here, the plaintiff) shall have performed any work thereunder whereby any commission shall be earned and collected, the salesperson shall be entitled to a share of such commission in accordance with the current commission schedule, '*except as may otherwise be agreed in writing by Broker and Salesperson before completion of any particular transaction.*' (Italics added.) [¶] It is readily apparent from the specific provisions first mentioned, that the written agreement expressed a clear intent to preclude oral modification of the kind claimed by plaintiff—a modification which directly contradicted the terms of the written contract. In addition, whereas the written contract and the attendant commission schedule provided that plaintiff was to work diligently to sell, lease or rent any and all real property and solicit additional listings and customers for a commission of 25 percent, the claimed oral modification provided that, in order to permit plaintiff to tend bar to make a living, he would deal in land sales only and not in residential sales, and receive for his efforts 50 percent of the commission. The trial court could properly determine that, within the meaning of subdivision (c) of Civil Code section 1698, the written contract expressly precluded such an oral modification of the written agreement." (*Id.,* at p. 189, fn. omitted, italics in original.) The appellate court further held that the trial court could properly determine that the alleged oral modification was invalid and ineffective because it was unsupported by *new* consideration, plaintiff already having agreed to bring listings to broker. In view of this lack of new consideration, even full performance by the promisee alone would not suffice to render the agreement "executed" within Civil Code section 1698. (*Beggerly, supra,* at p. 190.)

The instant contract contains the identical provision precluding modification other than in writing before completion of any particular transaction.

This alone would require exclusion of the oral agreement. Moreover, the trial court's express finding of consideration for the oral agreement is clearly erroneous. Marani was already obligated under the written contract to use his "best efforts" to solicit additional listings.

Therefore we conclude the court erred in allowing evidence of the oral agreement.

II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . .

The judgment as to the complaint is reversed and the trial court is directed to enter judgment on the complaint in favor of appellant Jackson. In all other respects the judgment is affirmed. Each party to bear his own costs on appeal.

Rouse, J., and Smith, J., concurred.

*See footnote, *ante,* page 695.