**Rodney SCHUMAN, Plaintiff—Appellant,**

**v.**

**IKON OFFICE SOLUTIONS, INC., Defendant—Appellee.**

No. 05–16297.

United States Court of Appeals, Ninth Circuit.

Submitted April 19, 2007 *.

Filed May 7, 2007.

---

6. *Carty v. Nelson*, 426 F.3d 1064, 1071 (9th Cir.2005).

7. *Carty v. Nelson*, 426 F.3d 1064, 1071 (9th Cir.2005).

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Stephen M. Murphy, Esq., San Francisco, CA, for Plaintiff–Appellant.

Jeremy T. Naftel, Esq., Mark S. Spring, Esq., Carlton Disante & Freudenberger LLP, Sacramento, CA, for Defendant–Appellee.

Before: D.W. NELSON and CALLAHAN, Circuit Judges, and CARNEY **, District Judge.

** The Honorable Cormac J. Carney, United States District Judge for the Central District of California, sitting by designation.

## MEMORANDUM ***

Appellant Rodney Schuman ("Schuman") appeals from the district court's grant of summary judgment to his employer, IKON Office Solutions, Inc. ("IKON"), on his claims for commissions relating to sales of office equipment to McKesson Corp. ("McKesson"), pursuant to a nationwide pricing agreement after IKON removed him from servicing sales to McKesson. In addition, Schuman appeals from the district court's denial of his motion to compel additional answers to interrogatories. We affirm.

## FACTUAL BACKGROUND

Schuman was a Major Account Executive for IKON, managing office equipment and related service sales accounts. As a Major Account Executive, Schuman's pay was determined according to the National Equipment Sales Compensation Plan ("the Plan"). The Plan specifically stated that employees were "at-will" and that IKON had "the right to change, cancel, expand or reduce the size, scope and type of any territory assignments to Sales Representatives at any time for any reason."

Schuman secured an equipment sales and servicing relationship with McKesson's San Francisco office in 1990. In late 2001, McKesson sought to secure a single nationwide provider of office equipment and services after successfully negotiating a three-year nationwide contract with IKON for one of its subsidiaries, HBOC. IKON responded to McKesson's Request for Proposals, relying primarily on other staff that serviced the HBOC contract. Schu-

man was listed as a primary point of contact for the nationwide McKesson service contract on IKON's bid documents. McKesson awarded the five-year nationwide service contract ("National Contract") to IKON in May 2002. The National Contract allowed McKesson to select from a menu of sales, service and leasing options for equipment sales, maintenance, master equipment, and document services. IKON removed Schuman from the National Contract at McKesson's request before the National Contract was fully executed. On October 11, 2002, IKON informed Schuman of its decision to reassign the account. IKON continued to pay Schuman 30% of the commissions on McKesson sales for six more months.

## STANDARD OF REVIEW

The court reviews de novo a district court's grant of summary judgment. *See Toguchi v. Chung*, 391 F.3d 1051, 1056 (9th Cir.2004). Viewing the evidence in the light most favorable to the nonmoving party, the court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. *See Leever v. Carson City*, 360 F.3d 1014, 1017 (9th Cir.2004). "The district court's grant of summary judgment may be affirmed if it is supported by any ground in the record, whether or not the district court relied upon that ground." *Summers v. A. Teichert & Son*, 127 F.3d 1150, 1152 (9th Cir. 1997). The court reviews a district court's rulings concerning discovery for an abuse of discretion. *See Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir.1995) (per curiam).

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

## DISCUSSION

### I.  IKON did not breach the Plan.

**A.**  *IKON had the right to remove Schuman from the National Contract.*

■ Schuman argues that under the Plan, IKON cannot reassign his accounts to other salespeople. The Plan states on page 62, however, that:

IKON has the right to change, cancel, expand or reduce the size, scope and type of any territory assignments to Sales Representatives at any time for any reason.

Under the plain language of the contract, IKON could remove Schuman from the National Contract account at any time.

**B.**  *IKON was not required to continue paying Schuman commissions indefinitely.*

■ The National Contract's stated purpose was to allow McKesson, its subsidiaries, or affiliates "to select from a menu of sales, service and leasing options ("Options") available through IKON ..., and to pre-establish the terms and conditions on which such Options shall be made available to [McKesson]." The National Contract was not a sales contract, but required the use of individual sales contracts to generate revenue for IKON.

Under California law, "[i]t is well established that an option is not a sale of property, but rather a sale of a right to purchase." *Anthony v. Enzler,* 61 Cal.App.3d 872, 132 Cal.Rptr. 553, 556 (1976). The National Contract, does not provide for a specific purchase, nor does it sell the right or option to buy specific equipment or services. Therefore, although the National Contract establishes IKON as a supplier, it does not mandate or require sales and as a result is not a sales contract.

Schuman concedes that he understood the Plan to require that equipment be installed and invoiced before commissions vest. Because the Plan specifically stated when a commission vested, the language of the Plan controls whether or not Schuman is entitled to continuing commissions after IKON removed him from the National Contract. *See Zinn v. Ex–Cell–O Corp.,* 24 Cal.2d 290, 149 P.2d 177, 180–81 (1944) (noting that equitable doctrines concerning commissions apply only where the express terms of the contract are silent on when commissions vest and are due). Therefore, IKON did not owe Schuman commissions upon the signing of the National Contract with McKesson.

In a related argument, Schuman contends that, as the "procuring cause" of the National Contract, he is entitled to all commissions on the National Contract. However, no provision in the Plan provides for payments to sales procured by sales agents, and Schuman cannot show any "procuring cause" provision. Therefore, given the language of the Plan, Schuman's understanding of when sales commissions vested, and the lack of legal support for using the procuring cause doctrine to contradict the express provisions of the Plan, the district court did not err in finding that Schuman was not entitled to continued commissions for sales made under the National Contract.

### II.  The Plan was not unconscionable.

■ California Civil Code section 1670.5 provides in pertinent part:

If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable

clause as to avoid any unconscionable result.

Cal. Civ.Code § 1670.5(a). California analyzes contract clauses for substantive unconscionability—whether the actual term of the agreement "shocks the conscience"—and procedural unconscionability—whether the manner in which the contract was negotiated was unfair. *See Am. Software, Inc. v. Ali,* 46 Cal.App.4th 1386, 54 Cal.Rptr.2d 477, 479 (1996). "Ultimately, unconscionability is a question of law to be decided by the Court." *McCollum v. XCare.net, Inc.,* 212 F.Supp.2d 1142, 1150 (N.D.Cal.2002).

The district court did not err in concluding that the Plan was not substantively unconscionable. The district court's factual findings that 1) the National Contract did not generate revenue; 2) IKON did not replace Schuman arbitrarily; and 3) the commissions did not revert to IKON but were paid to Schuman's successor, are all supported by the record. In addition, nothing about the Plan's commission vesting clause objectively shocks the conscience. A provision deferring commissions until payment is received or reasonably certain "is commonplace in employment contracts with sales representatives." *Ali,* 54 Cal.Rptr.2d at 481. Furthermore, considering that Schuman did not execute any sales pursuant to the National Contract, the terms of the Plan did not cause him to forfeit any commissions to which he was otherwise entitled. Therefore, the district court properly determined that the Plan was not substantively unconscionable.

## III. IKON did not breach the covenant of good faith and fair dealing.

■ Schuman also argues that IKON breached the covenant of good faith and fair dealing by unfairly removing him from the McKesson account.

In this case, IKON's removal of Schuman from the McKesson account was not in bad faith or pretextual. There is unrebutted evidence that IKON removed Schuman because of Peggy Davis's complaints and her demand that IKON remove him. Schuman did not introduce any evidence, other than his mere speculation, that IKON removed him from the account for the specific reason of denying him commissions that he actually earned. In the absence of evidence of bad faith, or evidence that IKON removed Schuman for the express purpose of denying him commissions, Schuman failed to create a genuine issue of material fact that IKON breached the implied covenant of good faith and fair dealing. *See Stromer v. Browning,* 65 Cal.2d 421, 55 Cal.Rptr. 18, 420 P.2d 730, 732–35 (1966) (noting unopposed finding of good faith reason eliminated implied covenant claim). Therefore, the district court properly granted IKON summary judgment on Schuman's implied covenant of good faith and fair dealing claim.

## IV. Schuman's quantum meruit argument fails as a matter of law.

■ Schuman argues that he is entitled to commissions on the National Contract because he was a "procuring cause" for the contract under a quantum meruit theory. Where there is an express contract stating the commission or fee structure, quantum meruit does not apply, regardless of whether or not the salesperson was a procuring cause. *Hedging Concepts v. First Alliance Mortgage Co.,* 41 Cal.App.4th 1410, 49 Cal.Rptr.2d 191, 197 (1996); *see also Beggerly v. Gbur,* 112 Cal.App.3d 180, 169 Cal.Rptr. 166, 172–73 (1980) (affirming judgment on the pleadings where there was a written commission contract and denial of a hearing on the issue of procuring cause). Therefore, Schuman's quan-

tum meruit theory of recovery fails as a matter of law.

## V. Schuman does not have a claim under California Business & Professions Code section 17200.

 Schuman argues in general terms that he has stated a cause of action under California's Unfair Competition Law (California Business & Professions Code § 17200 or "UCL"). To establish that a business practice is unlawful under the UCL, a plaintiff must show a violation of a statute or regulation. *See Farmers Ins. Exch. v. Super. Ct.*, 2 Cal.4th 377, 6 Cal. Rptr.2d 487, 826 P.2d 730, 734 (1992). Schuman did not allege, nor did he introduce evidence of, a violation of a statute or regulation by the Plan or any of IKON's business practices. Therefore he did not establish any unlawful practices as a matter of law, and summary judgment was proper. *Id.*

Alternatively, Schuman argues that IKON's actions are unfair within the meaning of the UCL. Schuman has not, however, identified any "unfairness" in IKON's compensation plan, or a violation of any statute. *Cel–Tech Comm., Inc. v. Los Angeles Cellular Tel.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527, 543 (1999). Therefore, the district court properly granted IKON summary judgment on the UCL claim.

## VI. The district court did not err in denying additional discovery.

 The district court did not abuse its discretion in denying Schuman responses to additional interrogatories. *See Sablan v. Dep't of Fin.*, 856 F.2d 1317, 1321 (9th Cir.1988). Schuman failed to establish the relevance of the interrogatories to his removal from the McKesson account.

## CONCLUSION

Schuman's quantum meruit argument fails as a matter of law. In addition, the district court properly interpreted the plain meaning of the Plan's compensation provisions, concluded that the procuring cause doctrine did not apply, and found that the Plan was not unconscionable. There is no evidence of bad faith to support a cause of action for breach of the implied covenant of good faith and fair dealing. Schuman's remaining claims of error are without merit. Therefore, the judgment of the district court is **AFFIRMED.**