**A. KEMP FISHERIES, INC., a Minnesota/Washington corporation, Plaintiff–Appellee,**

v.

**CASTLE & COOKE, INC., BUMBLE BEE SEAFOODS DIVISION; and Bumble Bee Samoa, Inc., a Delaware corporation, Defendants–Appellants.**

No. 87–3726.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1988.

Decided July 25, 1988.

Seth W. Morrison, Oles, Morrison, Rinker, Stanislaw & Ashbaugh, Seattle, Wash., Robert M. Westberg, Pillsbury, Madison and Sutro, San Francisco, Cal., for defendants-appellants.

Vi Jean Reno, McGee and Reno, Seattle, Wash., for plaintiff-appellee.

Before WRIGHT and CANBY, Circuit Judges, and ORRICK,* Senior District Judge.

EUGENE A. WRIGHT, Circuit Judge:

In this case we consider whether the court properly admitted parol evidence to determine the terms of the Charter Agreement between A. Kemp Fisheries, Inc. and Bumble Bee Samoa, Inc., a subsidiary of Castle & Cooke, Inc. We conclude that the court applied the parol evidence rule incorrectly and reverse its judgment.

BACKGROUND

A. Kemp Fisheries Inc. and Bumble Bee Samoa, Inc., a fully owned subsidiary of Castle & Cooke, Inc., agreed that Kemp would charter, with an option to purchase, the M/V CITY OF SAN DIEGO. Kemp needed the vessel to fish for herring and salmon in Alaska from April to August 1983. In February of that year they signed a letter of intent that incorporated certain telexes exchanged in their negotiations. This letter served as their agreement "[p]ending preparation and execution of final documentation required for the bareboat charter and option to purchase." To compensate Bumble Bee for removing the vessel from the market Kemp paid a nonrefundable deposit of $50,000.

After reviewing drafts of the agreement with Kemp's attorney, Bumble Bee sent the final bare boat Charter Agreement late in March. Louis Kemp, the charterer's president, found that the agreement differed from his understanding of the arrangement. Specifically, he understood that Bumble Bee had agreed that the engines would be in good working order and had represented orally that the freezing system would meet Kemp's specific needs. The agreement contained no such provisions and in fact, disclaimed all warranties, express or implied. Despite his reservations, Kemp signed it without voicing his concerns to Bumble Bee. He took the vessel in early April and sailed to Alaska for the May herring season.

In the midst of herring season, two of the three auxiliary engines that powered the SAN DIEGO's freezing system broke down. After repairing one engine, Kemp switched from freezing to curing the herring because it lacked confidence that the engine would last. Kemp sold the cured herring for a price below that for frozen herring.

In preparation for salmon season at the end of June, Kemp repaired the auxiliary engines and rented an additional engine. Although the engines were operating at full power and suffered no breakdowns, the salmon froze in a block and the flesh was "honey combed." Kemp's buyer rejected most of it. Kemp took it to a shore-based freezing plant in Bellingham where it was thawed and refrozen. It sold the salmon for 75¢ a pound, 50¢ less than the price it would have received for properly frozen salmon.

* Of the Northern District of California.

Kemp sued Bumble Bee and Castle & Cooke in admiralty for breach of the Charter Agreement, intentional and negligent misrepresentation, estoppel, and rescission.[1] It claimed that Bumble Bee agreed to provide engines in good working order and represented that the freezing system would meet its specific needs.

The trial judge found that the Charter Agreement signed in March was ambiguous and admitted parol evidence to clarify the parties' intent. She concluded that the letter of intent and referenced telexes reflected the parties' final intent and indicated that no other negotiations would occur. From evidence of their negotiations, she found that Bumble Bee warranted the vessel to be seaworthy and the engines to be in good working condition, and represented orally that the vessel's freezing system could meet Kemp's specific requirements. She held Bumble Bee liable for all of Kemp's damages because the "inability of the M/V CITY OF SAN DIEGO to freeze herring and salmon within the parameters specified by Bumble Bee is solely the result of Bumble Bee's breach of warranties." Bumble Bee appeals.

ANALYSIS

I. *Parol Evidence*

In the Charter Agreement, the parties agreed that "the Charter Party shall be governed by and enforced under the laws of the State of California." We apply California law in our analysis.

The parol evidence rule provides:

When the parties to a written contract have agreed to it as an "integration"—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms. When only part of the agreement is integrated, the same rule applies to that part, but parol evidence may be used to prove elements of the agreement not reduced to writing.

*Masterson v. Sine*, 68 Cal.2d 222, 65 Cal. Rptr. 545, 547, 436 P.2d 561 (1968) (cita-

tions omitted). *See also* Cal.Civ.Code § 1625, Cal.Code Civ.P. § 1856(a), and *Battery Steamship Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 738 (2d Cir.1975) (the federal common law parol evidence rule).

■■■ If a contract is integrated, the parol evidence rule operates to exclude evidence that is not "relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pacific Gas and Elec. Co. v. G.W. Thomas Drayage & R. Co.*, 69 Cal.2d 33, 69 Cal. Rptr. 561, 564, 442 P.2d 641, 644 (1968). "[E]xtrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract." *Id.* 69 Cal.Rptr. at 565, 442 P.2d at 645. If a contract is not integrated, the parol evidence rule does not apply. The court can admit all evidence relevant to the parties' intent, including negotiations and prior agreements.

"The crucial issue in determining whether there has been an integration is whether the parties intended their writings to serve as the exclusive embodiment of their agreement." *Marani v. Jackson*, 183 Cal.App. 3d 695, 228 Cal.Rptr. 518, 521 (1 Dist. 1986) (quoting *Salyer Grain & Milling Co. v. Henson*, 13 Cal.App.3d 493, 91 Cal.Rptr. 847 (5 Dist.1970)). To make this determination, the court considers:

the language and completeness of the written agreement and whether it contains an integration clause, the terms of the alleged [ ] agreement and whether they contradict those in the writing, whether the [ ] agreement might naturally be made as a separate agreement, and whether the jury might be misled by the introduction of the parol testimony. A court also considers the circumstances surrounding the transaction and its subject matter, nature and object.

*Marani*, 228 Cal.Rptr. at 522 (citations omitted).

---

1. Kemp claims that the judge entered independent judgments against Bumble Bee and Castle & Cooke and that Bumble Bee does not challenge Castle & Cooke's liability. The judge made clear that she considered both corporations to be the same and found that Bumble Bee had no separate identity.

## A. *Integration*

▮ The Charter Agreement is an integrated contract. The agreement itself is complete and comprehensive. It covers in great detail the various rights and responsibilities of the parties. Although the Charter does not contain an integration clause, the letter of intent shows clearly that the parties intended that the Charter would be the "final documentation" of their agreement.

The alleged agreements regarding the warranties of the vessel's seaworthiness, engines, and freezing system are not collateral agreements that would normally be made in a separate contract. These alleged understandings directly contradict the Charter's waiver of all warranties. In addition, the agreement specifies Bumble Bee's responsibility for testing and repairing the freezing system and preparing the vessel for Kemp. If Bumble Bee warranted the freezing system and the engines, the Charter Agreement would typically provide that.

The circumstances surrounding this transaction also support our conclusion that the contract is integrated. Kemp and Bumble Bee are corporations familiar with business transactions. Kemp's attorney reviewed the Charter with Bumble Bee in the month before it signed. Bumble Bee incorporated some of Kemp's changes into the final Charter presented in March. Kemp had ample opportunity to express its understanding of the deal. Nothing suggests that this agreement was not recognized by both parties as final and complete.

## B. *Ambiguity*

The judge admitted parol evidence to resolve ambiguities and contradictions within sub-paragraphs 3B, E and F. Sub-paragraph 3B provides:

B.  Prior to delivery of the Vessel, Owner shall maintain the Vessel in good condition and shall cause the Vessel to be surveyed, on its own account, by a competent surveyor chosen by Owner, which survey shall show that the Vessel meets TA 2003 insurance requirements and is in all respects tight, staunch, strong and seaworthy.

Sub-paragraphs 3E and F provide:

E.  Delivery to Charterer shall constitute full performance by Owner of all of Owner's obligations hereunder, and thereafter Charterer shall not be entitled to make or assert any claim against Owner on account of any representations or warranties, express or implied, with respect to the Vessel.

F.  Charterer's acceptance of delivery of the Vessel, its equipment, gear and non-consumable stores shall constitute conclusive evidence that the same have been inspected by Charterer and are accepted by Charterer as suitable for the intended use hereunder and, as between the parties, the seaworthiness and suitability of the Vessel, its equipment, gear and non-consumable stores are deemed admitted.

The judge construed sub-paragraph 3B as an express warranty of seaworthiness and sub-paragraphs 3E and F as a waiver of that warranty. To resolve this conflict, she turned to parol evidence.

The court erred. The parol evidence rule requires that courts consider extrinsic evidence to determine whether the contract is ambiguous. *Drayage*, 69 Cal.Rptr. at 565–66, 442 P.2d at 645–46 ("[R]ational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties."); *Trident Center v. Connecticut General Life Ins. Co.*, 847 F.2d 564, 569 (9th Cir. 1988). But if the extrinsic evidence advances an interpretation to which the language of the contract is not reasonably susceptible, the evidence is not admissible. *Drayage*, 69 Cal.Rptr. at 564, 442 P.2d at 644: "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is ... whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Cf. Trident*, at 570 n. 6.[2] The Charter Agreement is not

---

2.  The broad language in *Trident* suggests that under California law courts must always admit extrinsic evidence to determine the meaning of disputed contract language. *Trident* held only

"reasonably susceptible" to the court's interpretation that it warrants the seaworthiness of the vessel, the condition of the engines, and the capacity of the freezing system.

Sub-paragraph 3B concerns the condition of the vessel prior to delivery. It imposes on Bumble Bee an obligation to maintain the vessel in "good," not seaworthy condition, and to see that a "competent surveyor" surveys it to show that it is "tight, staunch, strong and seaworthy" for insurance purposes. It guarantees neither the accuracy of the survey nor the seaworthiness of the vessel.

Sub-paragraphs 3E and F address Bumble Bee's obligations after delivery. They provide that once Kemp accepts delivery, Bumble Bee's responsibility for the condition of the vessel ceases. They make clear that Kemp's acceptance of delivery releases Bumble Bee from responsibility for the vessel's condition and cannot be interpreted reasonably to warrant seaworthiness.

Nor should the court similarly have admitted evidence that Bumble Bee warranted the condition of the engines and the capacity of the freezing system. Paragraphs 3B, E and F do not even mention the engines or the freezing system and are not "reasonably susceptible" to that interpretation.

The court erred in admitting parol evidence and in enforcing warranties of seaworthiness, the engines, and freezing capacity. The Charter Agreement contains none of these warranties.

## II. *Duress*

As an alternative basis for affirmance, Kemp argues that the court found that it signed the Charter Agreement under economic duress. Because duress renders a contract voidable, it claims that the court did not err in failing to enforce the Charter Agreement and in considering parol evidence to discover the parties' intent.

It did not raise this issue below and the court did not find facts necessary for its resolution. We decline to consider the issue for the first time on appeal. *See Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir.1985).

## III. *Waiver of the Warranty of Seaworthiness*

Kemp argues that even if Bumble Bee did not expressly warrant the vessel's seaworthiness, the warranty is implied in every charter unless clearly and unequivocally waived. It claims that Bumble Bee failed to waive the implied warranty.

California provides that waivers of warranties may be enforced if they "clearly communicate that a particular risk falls on the [charterer]." *Hauter v. Zogarts,* 14 Cal.3d 104, 120 Cal.Rptr. 681, 690, 534 P.2d 377, 386 (1975). Such waivers are construed strictly against the maker. *Zogarts, id.* Federal maritime law is similar. *See Benedict* at 3–9; and *In Compania De Navigacion La Flecha v. Brauer,* 168 U.S. 104, 118, 18 S.Ct. 12, 15, 42 L.Ed. 398 (1897).

Sub-paragraph 3E provides that after accepting delivery, Kemp "shall not be entitled to make or assert any claim against Owner on account of any representations or warranties, express or implied, with respect to the Vessel." Sub-paragraph 3F provides that Kemp's acceptance of the vessel is conclusive evidence that it inspected the vessel and "deemed" it seaworthy and suitable for its needs.

■ These clauses clearly and unequivocally communicate that the risk of unseaworthiness would fall on Kemp once it accepted the vessel. Similar disclaimers have been found to be clear and unequivocal and have been enforced in admiralty. *See, e.g.,*

that courts may not dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous. The case must proceed beyond the pleadings so that the court may consider the evidence. If, after considering the evidence, the court determines that the contract is not reasonably susceptible to the interpretation advanced, the parol evidence rule operates to exclude the evidence. The court may then decide the case on a motion for summary judgment. *See Trident* at 570 n. 6. The court decided this case on a fully developed record.

*McAllister Lighterage Line v. Insurance Co.,* 244 F.2d 867, 871 (2d Cir.) *cert. denied sub nom.* 355 U.S. 871, 78 S.Ct. 123, 2 L.Ed.2d 76 (1957) ("The acceptance of said scow by charterer is to be conclusive evidence of the seaworthy condition of said scow at the commencement of this charter" is clear and unequivocal.) Bumble Bee effectively waived the implied warranty of seaworthiness. The court erred in refusing to enforce its waiver.

## IV. *Survey of the Vessel*

Sub-paragraph 3B provides that Bumble Bee "shall cause the Vessel to be surveyed ... by a competent surveyor chosen by Owner, which survey shall show that the Vessel meets TA 2003 insurance requirements and is in all respects tight, staunch, strong and seaworthy." The purpose of this survey was to establish that the vessel was insurable. Bumble Bee hired Franke, an independent contractor, to survey the vessel.

The court found that Franke failed to perform many of the required tests and inspections and that his report on the condition of the vessel was worthless. "It is perfectly clear that ... at least some of the boat's problems would have been apparent to someone with the skill of Mr. Franke had he ever really examined the boat, but he really never looked." The court concluded that Bumble Bee was responsible for Franke's failure to adequately survey the vessel.

Kemp can recover damages only for losses "which would naturally arise from the breach or which might have been reasonably contemplated or foreseen by the parties at the time they contracted, as the probable result of the breach." *Glendale Fed. S. & L. Assoc. v. Marina View, etc.,* 66 Cal.App.3d 101, 135 Cal.Rptr. 802, 816 (4 Dist.1977) (citing Civ.Code Cal. § 3300; other citations omitted).

■ From the record, we cannot determine whether Franke acted as an agent of Bumble Bee or he maintained his status as an independent contractor. We need not remand for further findings on this issue because we can resolve Bumble Bee's liability on other grounds. Even assuming that Franke was Bumble Bee's agent and that his acts breached this provision, Kemp cannot recover its losses because they were not reasonably foreseeable as the probable result of a breach of this provision when they made the contract.

The purpose of the survey was not to establish its seaworthiness for Kemp but was to establish its seaworthiness for the insurer. Subparagraphs 3E and F imposed on Kemp responsibility for satisfying itself that the vessel was seaworthy in fact. Given the limited purpose of the survey, the probable and foreseeable result of a breach would be a problem with insurance coverage, not a problem with the auxiliary engines. By the terms of the contract, Kemp's own inspection was to reveal such problems.

## CONCLUSION

The judgment is REVERSED and is rendered for the defendant. The Charter Agreement is an integrated contract and contained all the parties' agreements. It is not ambiguous and the court erred in admitting parol evidence on the warranty of seaworthiness, the capacity of the freezing system, and the engines. Bumble Bee effectively waived the implied warranty of seaworthiness and all other warranties. Bumble Bee is not liable for Kemp's losses.