**Steven P. SHEARING, Plaintiff,**

v.

**IOLAB CORPORATION, a corporation, and Johnson & Johnson, a corporation, Defendants.**

**No. CV-S-85-851 (PMP).**

United States District Court, D. Nevada.

April 24, 1989.

Gregory P. Stone, Munger, Tolles & Rickershauser, Los Angeles, Cal., Morton R. Galane, Las Vegas, Nev., for plaintiff.

Don K. Harness, Harness, Dickey & Pierce, Birmingham, Mich., for Iolab Corp.

Donal B. Tobin, Russell G. Deyo, New Brunswick, N.J., Kenneth C. Cory, Cory, Cory & Bindrup, Las Vegas, Nev., for defendants.

## ORDER DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

PRO, District Judge.

In this action, Plaintiff STEVEN P. SHEARING ("Shearing"), asserts contract claims against Defendant IOLAB CORPORATION ("Iolab"), and tort claims against both Iolab and Defendant JOHNSON & JOHNSON ("J & J"). Shearing's claims arise out of a license agreement (the "Agreement") entered into between Shearing and Iolab in July 1978.[1] The Agreement granted Iolab rights to any patent which issued from a then pending patent application, filed in June 1977, relating to intraocular lenses. Under the Agreement, Iolab contracted, *inter alia*, to make royalty payments to Shearing for the life of the patent. Iolab terminated the payment of royalties in June 1986.

Shearing brought suit under this Court's diversity jurisdiction.[2] Before the Court are Iolab's three motions for partial summary judgment on the following issues: (1) patent invalidity (# 183); the termination of royalty payments (# 187); and (3) Iolab's alleged failure to use its best reasonable efforts to market improvements to Shearing's patent (# 201).[3] In addition, Shearing has filed a motion to strike (# 199) designated parts of affidavits and portions of depositions submitted by Iolab in support of its partial summary judgment motion on the termination of royalty payments, and to preclude testimony on the subject matter of such portions of those affidavits and depositions.

This Court denies all Iolab's partial summary judgment motions, strikes those designated portions of the affidavits and depositions offered in support of partial summary judgment motion # 187, but does not preclude testimony as to the subject matter at trial.

### FACTUAL BACKGROUND

An intraocular lens is an artificial lens placed within the eye to replace a damaged natural eye lens. It consists of an optical lens portion and supporting strands, sometimes referred to as loops. The strands position the optical portion and maintain it in place. On June 15, 1977, Shearing filed a patent application (the "Patent Application") for a method by which an intraocular lens could be inserted, centered, and permanently fixated in the desired position

---

1. Iolab was subsequently acquired by J & J in 1980. Inasmuch as J & J has assumed Iolab's contractual rights and obligations under the license agreement, both J & J and Iolab will be collectively referred to as "Iolab."

2. The Complaint, as amended, states four causes of action: breach of express license agreement provisions, breach of an implied covenant of good faith and fair dealing regarding the license agreement, intentional interference with Shearing's interest in prospective relationships for economic advantage, and a joint course of conduct between J & J and Iolab which intentionally interfered with Shearing's interest in prospective relationships of economic advantage.

3. The motions were opposed by Shearing, and Shearing's motions in opposition (## 196, 194, 212, respectively) were, in turn, replied by Iolab (## 209, 210, 221, respectively).

behind the iris in the posterior chamber of the eye.

In July 1978, Shearing and Iolab entered into the Agreement, under which Shearing granted "an exclusive license to IOLAB to make, use and sell under SHEARING'S aforesaid Patent Rights." Agreement at Art. III. Inasmuch as the Agreement is subject of Iolab's second and third motions for partial summary judgment (# # 187 and 201), the Court has reviewed its terms at length.

The defined term "Patent Rights" utilizes the term "Shearing Lens," which is defined in pertinent part as "any lens *structure or procedure* claimed in [the] [P]atent [A]pplication, ..." *Id.* at Art. II(A). As consideration for Shearing's patent rights, Iolab agreed that "[a]fter IOLAB has sold twenty-five hundred (2,500) Shearing Lenses, IOLAB shall pay royalties to SHEARING of five percent (5%) of net sales of Shearing Lenses." *Id.* at Art. IV(A). In addition, Iolab obligated itself to "use its best reasonable commercial efforts in advertising, promoting, and marketing Shearing Lenses, ..." *Id.* at Art. VII(A).

Article IX of the Agreement is entitled "Termination" and governs the conditions under which the parties may terminate the Agreement. Part A of Article IX describes how the royalty payment obligation may be affected by the result of the then pending Patent Application:

> Should no patents issue from SHEARING's aforesaid [Patent Application] *containing claims covering the Shearing Lens manufactured by IOLAB* within four (4) years from the filing date of June 15, 1977, then IOLAB shall have no obligation to pay further royalties according to Article IV(A), after said four years. If, after said four year period, no patent is issued, IOLAB agrees to pay Shearing royalties of three percent (3%) for an additional five (5) years for exclusive rights to use the "SHEARING" name. Thereafter, IOLAB shall continue to pay Shearing a three percent (3%) royalty for so long as it uses the name "SHEARING". (Emphasis added.)

In June 1979, U.S. Patent No. 4,159,546 (the "Patent") was issued. The claims contained therein relate to a method of implanting an intraocular lens. Iolab argues that since the Patent does not contain a claim covering the lens configuration itself, Iolab failed to receive the opportunity for which it claims it bargained in the Agreement. Namely, to be the sole manufacturer of an intraocular lens having the Shearing lens "J-loop" configuration. In June 1986, Iolab notified Shearing that no more royalty payments would be made. This nine year period covered the four years from the filing date of the Patent Application, as well as an additional five years for the exclusive right to use the "Shearing" name.

## STANDARD FOR GRANT OF SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Cal. Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. den.,* — U.S. ——, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

■ A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1305–06 (9th Cir.1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

■ All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Pollar v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

This Court is cognizant that the recent trilogy of Supreme Court cases establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1); *see also Avia Group Intern., Inc. v. L.A. Gear California,* 853 F.2d 1557, 1560 (Fed.Cir. 1988).

Nevertheless, applying these legal principles to the dense factual matrix presented, this Court concludes, for the reasons discussed herein, that Iolab's motions for partial summary judgment must be denied.

## MOTION FOR PARTIAL SUMMARY JUDGMENT OF PATENT INVALIDITY

Iolab filed a Motion for Partial Summary Judgment of Patent Invalidity (# 183) based on the assertion that the Patent Application failed to satisfy the requirement of 35 U.S.C. § 112 that an application for a patent contain the "best mode" contemplated by the inventor of carrying out the invention at the time the application is filed. Specifically, Iolab maintains that the Patent only covers a single method of inserting an intraocular lens, and that at the time the Patent Application was filed, Shearing knew of another, superior method of insertion.[4]

This Court has considered the pleadings and the attached exhibits, affidavits, and deposition testimony, and must conclude that Iolab has failed to sustain its burden of persuasion, while Shearing raises genuine issues of material fact, thereby precluding partial summary judgment of patent invalidity.

■ It is well-established that a patent shall be presumed valid, and each claim shall be presumed valid independently of the validity of other claims. 35 U.S.C. § 282. Moreover, the burden is on the party asserting invalidity to prove it with facts supported by clear and convincing evidence. *Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve,* 796 F.2d 443, 446 (Fed.Cir.1986).[5]

---

4. As part of the Patent Application, Shearing submitted an affidavit to the Patent Office in which, Iolab asserts, he indicated that insertion of the intraocular lens involved forceps manipulation of the second strand. # 183, Exhibit 5 at 3, cited therein and attached thereto. Nevertheless, Shearing takes issue with Iolab's conclusion that his affidavit states that he considered "second strand forceps manipulation" as the best mode for insertion. This is sufficient to raise a genuine issue of material fact as to whether the Patent adequately discloses the best mode for carry out the invention as contem-

plated by Shearing on the application filing date.

5. Although not susceptible to precise definition, "clear and convincing" evidence has been described as evidence which produces in the mind of the trier of fact "an abiding conviction that the truth of [the] factual contentions are 'highly probable.'" *Buildex Inc. v. Kason Industries, Inc.,* 849 F.2d 1461, 1463 (Fed.Cir.1988), quoting *Colorado v. New Mexico,* 467 U.S. 310, 316, 104 S.Ct. 2433, 2437, 81 L.Ed.2d 247 (1984).

Given the rigorous evidentiary standard imposed, summary judgment is inappropriate since Shearing presents evidence which raises a genuine issue of material fact as to whether the Patent Application specifies the "best mode" for lens insertion, as known at the application filing date.

The method by which to determine whether or not a specific patent disclosure is adequate for "best mode" purposes is to compare the disclosure with the facts concerning the invention known to the inventor at the time the application was filed. *Dana Corp. v. IPC Ltd. Partnership*, 860 F.2d 415, 418 (Fed.Cir.1988). Since "there is no objective standard by which to judge the adequacy of a best mode disclosure, ... only evidence of 'concealment', whether accidental or intentional, is considered." *Id.*, quoting *Spectra–Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1535 (Fed.Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987). That evidence, in order to establish failure to disclose the "best mode", must demonstrate that the quality of the application's best mode disclosure is so poor as to effectively result in concealment. *Id.*

 This issue turns on the evaluation of the applicant's state of mind, in the context of testimony of witnesses, as well as the technological significance of the method. Consequently, compliance with the "best mode" requirement is a question of fact. *Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 680 (Fed.Cir. 1988). *See also Kangaroos U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1575 (Fed.Cir. 1985), citing *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185 (8th Cir. 1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977) (summary judgment is inappropriate where issues of fact, intent, good faith and other subjective feelings predominate).

In sum, this Court's role in considering a motion for summary judgment is to determine whether there are genuine issues of material fact, not to decide them. Shearing has demonstrated that genuine issues of material fact exist as to the scope of the Patent, and as to whether the Patent Application met the "best mode" requirement. Furthermore, all doubts concerning whether there are genuine issues must be resolved in favor of Shearing. Therefore, Iolab's Motion for Partial Summary Judgment of Patent Invalidity (# 183) is denied.

## MOTION FOR PARTIAL SUMMARY JUDGMENT ON ROYALTY TERMINATION

 Iolab filed a "Motion for Partial Summary Judgment With Respect to 5% Royalty Termination Under Paragraph 4(a) of the Amended Complaint" (# 187). Iolab's motion is based on the contention that the express language of the Agreement is clear and unambiguous, that is, it is "reasonably susceptible" of one meaning only. Accordingly, Iolab maintains that it properly invoked the termination clause (discussed in "Factual Background," *supra*) when it terminated royalty payments to Shearing. Moreover, Iolab asserts that even under Shearing's interpretation of the termination clause, Iolab properly exercised the termination clause because the Patent does not cover claims covering the preferred procedure by which lenses are inserted.

There is no dispute that California law governs this Court's analysis of the Agreement, based upon the parties' express choice of that state's law at Article X of the Agreement. It is clear to this Court that the Agreement is not reasonably susceptible of one meaning only. The definition of "Shearing Lens" includes "any lens structure *or* procedure" [Article II(A) (emphasis added)], thereby raising a genuine issue of material fact as to the scope of the invention for which Shearing is entitled to royalties. In addition, the termination clause itself is predicated on the failure of the Patent Application to issue a patent "containing claims covering the Shearing Lens manufactured by Iolab" [Article IX(A)].

Under a quite reasonable interpretation, this language can mean that if the Patent contains a claim, even a single procedure which covers a single method of inserting the lens structure manufactured by Iolab

(not covered by the Patent), then Iolab is contractually bound to pay royalties for that procedure (patented) covering the lens structure (unpatented).

Inexplicably, Iolab neglected to discuss the Ninth Circuit's governing authority on California's unusual rule of contract interpretation. In *Trident Center v. Connecticut General Life Ins.*, 847 F.2d 564 (9th Cir.1988), the Ninth Circuit was obliged to conclude that under California law, even seemingly unambiguous contracts are subject to modification by parol or extrinsic evidence. In *Trident*, the appellate panel noted that the normal rule of construction is that courts must interpret contracts, if possible, so as to avoid internal conflict. 847 F.2d 564 at 566. Moreover, under traditional contract principles, extrinsic evidence is inadmissible to interpret, vary or add to the terms of an unambiguous integrated written instrument. *Id.* at 568.

California, however, does not follow the traditional rule. In *Trident*, the Ninth Circuit unenthusiastically applied the governing California Supreme Court decision under which

> ... it matters not how clearly a contract is written, nor how completely it is integrated, nor how carefully it is negotiated, nor how squarely it addresses the issue before the court: the contract cannot be rendered impervious to attach by parol evidence. If one side is willing to claim that the parties intended one thing but the agreement provides for another, the court *must* consider extrinsic evidence of possible ambiguity.

> *Id.* at 569 (emphasis added).

The Ninth Circuit panel's distaste with California's unconventional rule is palpable. Since the contract at issue in *Trident* was clearly unambiguous on its face, the Ninth Circuit was quick to note:

> Nothing we say should be construed as foreclosing [a party] from moving for summary judgment after completion of discovery; given the unambiguous language of the contract itself, such a motion would succeed *unless [the non-moving party] were to come forward with extrinsic evidence sufficient to render the contract reasonably susceptible to [the non-moving party's] alternate interpretation, thereby creating a genuine issue of material fact resolvable only at trial.*

> *Id.* at 570 n. 6 (emphasis added).

Unlike the contract at issue in *Trident*, the Agreement at issue in this action is reasonably susceptible to Shearing's interpretation, and consequently, this Court must allow the extrinsic evidence offered by both sides to be resolved at trial.[6]

Assuming *arguendo*, the Agreement is not ambiguous, the scope of the Patent claims raises a genuine issue of material fact as to termination of royalties.

In its motion for partial summary judgment on royalty termination, Iolab asserts that even if this Court were to accept Shearing's interpretation of the Agreement, Iolab properly terminated royalty payments since the Patent does not cover "the method of inserting lenses manufactured by Iolab" as Shearing asserts the Agreement requires.

The basis for this argument is that the scope of the claims of the Patent cover only the method of inserting an intraocular lens via the compression of the first strand, thereby causing the second strand to automatically spring into position. Iolab offers evidence in the form of affidavits from experts, deposition testimony, and patent prosecution history to demonstrate that there is no suggestion in the Patent that the second strand is compressed or other-

---

**6.** In a subsequent decision, *A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc.*, 852 F.2d 493 (9th Cir.1988), the Ninth Circuit reiterated that *Trident* teaches that courts must consider extrinsic evidence offered by the party claiming that a contract is ambiguous. The *Kemp Fisheries* panel then opined: "If, after considering the evidence, the court determines that the contract is not reasonably susceptible to the interpretation advanced, the parol evidence rule operates to exclude the evidence. The court may then decide the case on a motion for summary judgment." 852 F.2d at 496 n. 2 (citing *Trident* at 570 n. 6).

In this action, the Court finds that the Agreement is reasonably susceptible to more than one interpretation. Accordingly, extrinsic evidence must be weighed by the jury as the trier of fact.

wise bent during lens implantation. In other words, Iolab asserts that the claims contained in the Patent are limited to the method by which insertion of the second strand through the pupil occurs solely as a result of the compression of the first strand.

Iolab next offers deposition testimony to the effect that physicians utilize methods of insertion different from that contained in the Patent.[7] Consequently, Iolab maintains that Shearing failed to patent claims which cover all methods of inserting lenses manufactured by Iolab, and this failure warranted Iolab's termination of the royalty payments.

█ The scope of a patent claim is a question of law. *George v. Honda Motor Co., Ltd.*, 802 F.2d 432, 434 (Fed.Cir.1986). Accordingly, the existence of a dispute as to the legal issue of claim scope does not necessarily preclude partial summary judgment. In this action, however, the dispute over the scope of the claims contained in the Patent go beyond legal issues, and have factual underpinnings. Accordingly, this Court is mindful of the Federal Circuit's admonition:

> When a claim is in dispute, however, it is *always* necessary to look at certain extrinsic evidence, namely, the specification, the prosecution history, and the other claims ... Although claim construction (what its scope is) is a legal conclusion, *underlying factual disputes may arise which preclude summary judgment....* If complex scientific principles are involved or expert testimony is needed to explain a disputed term, for example, then an underlying factual question may arise which makes summary judgment improper.
> *Howes v. Medical Components, Inc.*, 814 F.2d 638, 643 (Fed.Cir.1987) (emphasis added) (citations omitted).

Summary judgment is inappropriate since there are underlying factual disputes, and the meaning of the language and procedures described in the Patent, as well as the prosecution history are complex enough to require expert testimony to determine their meaning.[8] *Tillotson Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1039 (Fed.Cir.1987); *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 974 (Fed.Cir.1985).

### SHEARING'S MOTION TO STRIKE PORTIONS OF AFFIDAVITS AND DEPOSITION TESTIMONY

█ Iolab's motion for partial summary judgment on termination of royalties (# 187) relies in part on certain affidavits and deposition testimony which are the subject of Shearing's motion to strike (# 199). The grounds for the motion are that (1) the challenged parts of the designated affidavits fail to comply with the requirements of Fed.R.Civ.P. 56(e) that an affidavit in support of a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"; and (2) the challenged portions of the designated depositions fail to comply with the case law interpretation of Fed.R. Civ.P. 56(c) which provides that the court may consider only those portions that would be admissible in evidence at trial.

---

7. Specifically, Iolab offers deposition testimony concerning two methods of lens insertion using second strand compression without compression of the first strand. *See* # 187, Sinskey Affidavit at ¶ 15, Exhibit 15 attached thereto; Lindstrom Affidavit at ¶ 12, Exhibit 16 attached thereto.

8. This Court acknowledges Shearing's characterization of the factual dispute regarding the scope of the claims contained in the Patent:
 A patent claim is to be understood and interpreted in light of what technical terms and phrases mean to persons who are skilled in the art to which the invention pertains and would understand those terms to mean in the context of the patent specification. Where persons who are skilled in the art give conflicting interpretations, it is a question of fact for the jury to resolve as to which interpretation is correct, taking into account the credibility of the witnesses.
 Shearing's "Memorandum of Points and Authorities in Opposition to Motion for Partial Summary Judgment with Respect to 5% Royalty Termination under Paragraph 4(a) of the Amended Complaint" (# 194) at 31.

Iolab's response (# 208) argues that the affidavits and depositions are sufficient because several of the affiants and deponents are experts and the testimony is based on professional knowledge, judgment and opinion. Iolab asserts that this is sufficient because Fed.R.Evid. 702 permits experts to testify and render opinions as to matters to which they do not have personal knowledge. This argument, however, fails to support the use of such testimony to support a motion for summary judgment.

Fed.R.Civ.P. 56(e) does not differentiate between affidavits by experts and non-experts and provides no exception for affidavits based on professional knowledge, judgment and opinion. Fed.R.Evid. 702 governs whether experts can testify at trial, but Fed.R.Civ.P. 56(e) governs the summary judgment motions before this Court. While Rule 56(e) requires that the affidavit "set forth such facts as would be admissible into evidence," that is only one requirement of a Rule 56 affidavit. The requirement of Rule 56(e) that affidavits "shall be made on personal knowledge" is not vitiated because testimony would be admissible at trial.

This action is at the summary judgment stage, not trial. This Court cannot consider those challenged portions of the affidavits and depositions, and Shearing's motion to strike (# 199) is granted.[9]

This Court does not, however, intend that this order be resurrected by Shearing at trial so as to preclude Iolab from the opportunity of establishing a foundation and introducing proof on the matters raised by the challenged portions of the affidavits and depositions designated in Shearing's motion to strike.

## MOTION FOR PARTIAL SUMMARY JUDGMENT ON IOLAB'S ALLEGED DUTY TO USE BEST EFFORTS RE IMPROVEMENTS TO SHEARING LENSES

■ Iolab filed a motion for partial summary judgment (# 201) on the issue of whether Iolab was contractually bound to use its "best reasonable commercial efforts to develop or commercialize improvements to the Shearing Lens."[10] Iolab asserts that the Agreement is unambiguous as to the lack of such an obligation, and that no extrinsic evidence should be considered to raise an issue for the trier of fact.

Iolab argues that the Agreement clause discussing improvements casts obligations with respect to improvements only on Shearing, while it creates no comparable obligation on the part of Iolab. Indeed, Shearing is required to communicate to Iolab in writing any improvements that he makes or that he become the owner of through patents or otherwise, while Iolab is entitled to use any such improvements without any additional payment to Shearing.[11]

9. Summary judgment motions concern whether there are material facts in dispute. Even if this Court were to consider the challenged portions of the affidavits and depositions offered by Iolab, this Court still would be obliged to conclude that Shearing sufficiently raises genuine issues of material fact, thereby precluding summary judgment.

10. The clause which Shearing maintains gives rise to Iolab's obligation is contained at Article VII(A) of the Agreement:

VII. BEST EFFORTS AND OBLIGATIONS

A. IOLAB agrees to use its best reasonable commercial efforts in advertising, promoting, and marketing Shearing Lens, and in meeting the market demands therefor.

11. Improvements to the Shearing Lens are defined at Article II(B) of the Agreement as follows:

B. The term "Improvement" as used herein shall mean any beneficial change or modification in the structure or procedure of the Shearing Lens which shall be of such nature as to be within the fair scope of any claim or claims appearing in the aforesaid patent application or in any patent issuing therefrom. The rights and obligations of the parties with respect to such improvements are discussed at Article VI:

VI. *New Inventions*

If during the term of this Agreement, SHEARING makes Improvements in or pertaining to Shearing Lens or becomes the owner of any such Improvements either through patents or otherwise, then SHEARING shall communicate such Improvements to IOLAB in writing and give IOLAB full written information regarding such improvements and IOLAB shall be entitled to use the same with all rights which are hereby granted in respect of the Shearing Lens without any additional payment.

Furthermore, Iolab points out that Article VII, which establishes Iolab's "best reasonable commercial efforts" (*see* note 10, *supra* ), extends only to the Shearing Lens, and not to any improvements. Accordingly, Iolab relies on the legal doctrine of *expressio unius est exclusio alterious* [12] as support for its position that the Agreement is unambiguous regarding this matter.

The Court cannot agree. As discussed in the section on Iolab's motion for partial summary judgment motion on royalty termination, *supra,* California law precludes summary judgment if a jury might reasonably infer a different interpretation of a contract with the aid of extrinsic evidence. Shearing offers extrinsic evidence to the effect that it is normal and customary in an exclusive licensing arrangement to imply an obligation of the licensee to use its reasonable best efforts with respect to improvements on the invention for which the licensee purchased rights. # 212, Affidavit of Paul E. Enlow, attached thereto.

Moreover, under California law, the invocation of the *expressio unius* doctrine necessarily implies that the contract sought to be interpreted is, as a matter of law, ambiguous, and extrinsic evidence is therefore admissible to prove the intent of the parties. *Steven v. Fidelity and Casualty Co. of New York,* 58 Cal.2d 862, 377 P.2d 284, 289–90, 27 Cal.Rptr. 172, 177–78 (1963).

Consequently, this Court cannot confine its analysis to the "four corners" of the Agreement to determine the intent of the parties regarding the existence or extent of a "best reasonable commercial efforts" duty on the part of Iolab. Partial summary judgment in favor of Iolab is therefore inappropriate.[13]

As a final matter, Iolab seeks to have this Court exclude evidence concerning Iolab's alleged failure to develop or commercialize improvements at trial. Iolab speculates that

Shearing intends to devote a substantial portion of his contemplated 50–day trial to bombarding the jury with all of the alleged lens design variations that he purportedly dreamed up from approximately 1977 and 1982. The purpose of this massive onslaught of irrelevancy is obvious: to befuddle the jury by the sheer weight of this evidence.... Iolab never would have entered into the [Agreement] had it contained a provision obligating Iolab to use its best reasonable commercial efforts to develop and commercialize all of Shearing's suggested improvements.

# 201 at 3.

This Court is confident that no trial judge will permit the introduction of unnecessarily distracting and irrelevant evidence to complicate what will already be a complex case at trial.[14]

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant IOLAB and JOHNSON & JOHNSON'S Motions for Partial Summary Judg-

---

**12.** A maxim of statutory interpretation meaning that the expression of one thing is the exclusion of another. *Black's Law Dictionary* 521 (5th ed. 1979).

**13.** Iolab also argues that the Patent Application was fraudulently asserted, and would have this Court conclude that this warrants summary judgment regarding the "best efforts" clause of the Agreement [Article VII(A) ]. # 201 at 14–17. Shearing's Response, in turn, devotes considerable space to rebutting Iolab's assertion. # 212 at 20–29. This issue of subjective intent is entirely beyond the scope of this Court's analysis for summary judgment purposes. Such arguments are within the province of the jury, as the trier of fact. *Kangaroos U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1575 (Fed.Cir.1985), citing *Pfizer,*

*Inc. v. International Rectifier Corp.,* 538 F.2d 180, 185 (8th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977) (summary judgment is inappropriate where issues of fact, intent, good faith and other subjective feelings predominate).

**14.** Indeed, even Shearing acknowledges the limitations on the extent to which evidence of his proposed improvements will be admitted at trial:

If some of the ideas and conceptions which Dr. Shearing was obligated to immediately disclose to Iolab were bad ideas, "best efforts" or "best reasonable commercial efforts" would not have required Iolab to mindlessly devote its resources to that invention. # 212 at 7.

ment (# 183), (# 187), and (# 201) are DENIED;

IT IS FURTHER ORDERED that Plaintiff SHEARING'S Motion to Strike (# 199) is GRANTED only for purposes of IOLAB'S motion for partial summary judgment filed as Court document (# 187).