# United States Court of Appeals
# FOR THE EIGHTH CIRCUIT

_____

No. 01-1611

_____

| | | |
|---|---|---|
| Lee-Thomas, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Hallmark Cards, Inc., | * | District of Missouri |
| | * | |
| Appellee. | * | |

_____

Submitted: November 16, 2001
Filed: January 2, 2002

_____

Before McMILLIAN, MORRIS SHEPPARD ARNOLD, Circuit Judges, and NANGLE,[1] Senior District Judge.

_____

NANGLE, Senior District Judge.

Appellant Lee-Thomas, Inc. appeals from a final order entered in the Western District of Missouri,[2] granting summary judgment in favor of Appellee Hallmark

_____

[1] The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

[2] The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

Cards, Inc. ("Hallmark") on its indemnity claim. For reversal, Appellant argues that the district court: (1) erred by finding that Appellant was liable as a successor-in-interest; (2) erred by concluding that Hallmark only needed to show potential rather than actual liability to maintain its indemnification action; and (3) abused its discretion by awarding over $7,000.00 in expert witness fees. For the reasons discussed below, we affirm the district court's well-reasoned opinion.

## I. Background

On January 9, 1995, Deborah Reithmeyer filed a products liability action ("Reithmeyer suit") against Hallmark for selling an allegedly defective "Patty Woodard" blouse. Hallmark operates a department store in Kansas City, Missouri under the name "Hall's" in which it sells merchandise including women's clothing. During discovery in the Reithmeyer suit, Hallmark learned that the manufacturer of the blouse, Patty Woodard, had entered into a transaction with Appellant whereby Appellant agreed to purchase certain assets and assume certain liabilities of Patty Woodard.

In August 1996, Hallmark contacted Appellant to discuss the contention that Appellant, as the successor-in-interest to the manufacturer of the allegedly defective blouse, was obligated to indemnify Hallmark for expenses incurred in defending the Reithmeyer suit. Appellant's counsel informed Hallmark that it was tendering the defense of the claim to its insurance carrier. On September 25, 1996, Hallmark made a formal tender of the defense of the Reithmeyer suit, but counsel for Appellant's insurance carrier declined to defend or indemnify Hallmark in connection with the suit. On November 7, 1996, Hallmark settled the Reithmeyer suit for $50,000.

Following the settlement, Hallmark filed the instant case against Appellant seeking indemnification for the settlement amount and for its legal fees and expenses incurred in connection with the Reithmeyer suit. Both parties filed motions for

summary judgment. On February 8, 2001, the district court granted Hallmark's motion for summary judgment and denied Appellant's motion. In its order granting summary judgment to Hallmark, the district court concluded that: (1) in accordance with the Asset Purchase Agreement ("the Agreement"), Appellant agreed to assume Patty-Woodard's liability for product defects; (2) Hallmark only had to show potential, and not actual, liability in order to obtain indemnification for its settlement of the Reithmeyer suit; (3) the settlement agreement was reasonable; and (4) Hallmark timely tendered the defense of the Reithmeyer suit.

This appeal followed.

## II. Discussion

### A. Standard of Review

We review the district court's order granting summary judgment *de novo*, viewing the evidence and the inferences drawn from the evidence in the light most favorable to the nonmoving party, to ensure "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Henerey v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir. 1999).

### B. Assumption of Liability

Appellant argues that the district court erred by finding that it is liable for the products liability claims as a successor-in-interest to Patty Woodard. This argument hinges on the district court's interpretation of the Agreement which facilitated the asset purchase transaction. Section 2.1 of the Agreement states as follows:

Assumption of Liabilities. Except solely as set forth in

section 2.2[3] buyer <u>shall assume all the liabilities of the seller</u> existing on the date of the closing, <u>and liabilities arising solely out of the business conducted by seller prior to the closing</u> and shall indemnify seller from the same and from all costs or expenses associated therewith, in the same manner and to the same degree as if buyer had purchased all the outstanding capital stock of seller at the closing.

Appellant asserts that the district court erred by relying on Missouri law to interpret the Agreement as unambiguous and to exclude an affidavit of Appellant's attorney, Mr. David Lynn. In the affidavit, Mr. Lynn states that it was Appellant's understanding that under Section 2.1 "Lee-Thomas would assume expenses and debts accrued from all costs of conducting business generally . . . not liabilities from extraordinary events such as tort claims." Appellant claims that the district court should have interpreted the Agreement in accordance with California law and determined whether Mr. Lynn's affidavit presents a "reasonably susceptible" interpretation of the Agreement. Appellant further argues that because the Agreement does not specifically mention "product liability claims" or "unknown" or "contingent" claims, the district court erred by finding that the assumption of liability provision covers a products liability claim which arose over twenty years after the Agreement took effect. We conclude that neither of these contentions has any merit because we find that the Agreement's assumption of liability provision unambiguously requires Appellant to assume Patty Woodard's liabilities with respect to the products liability suit.

Interpreting the Agreement under California law, we find that Mr. Lynn's

---

[3] Section 2.2 of the agreement only excludes certain liabilities for taxes incurred prior to the closing of the transaction.

affidavit does not provide a reasonable interpretation of the Agreement.[4] Appellant correctly notes that the California courts have severely eroded the parol evidence rule. Wilson Arlington Co. v. Prudential Ins. Co. of Am., 912 F.2d 366, 369 (9th Cir. 1990). Under California law, "[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the contract is reasonably susceptible." Barris Ind., Inc. v. Worldvision Enters., Inc., 875 F.2d 1446, 1450 (9th Cir. 1989). Thus, even if a contract appears to be absolutely clear on its face, the court is required to engage in preliminary consideration of extrinsic evidence to see whether it creates an ambiguity. Id. However, "if the extrinsic evidence advances an interpretation to which the contract is not reasonably susceptible, the extrinsic evidence is not admissible." Id. (citing A. Kemp Fisheries v. Castle and Cook, Inc., 852 F.2d 493 (9th Cir. 1988). Finally, "the mere existence of extrinsic evidence supporting an alternative meaning does not foreclose summary judgment where the extrinsic evidence is insufficient to render the contract susceptible to the non-movant's proffered interpretation." Id. (citing Trident Ctr. v. Conn. Gen. Life Ins. Co., 847 F.2d 564 (9th Cir. 1988)).

Applying this standard, we find that Mr. Lynn's affidavit does not present a reasonable interpretation of the Agreement's assumption of liability provision. It is important to note at the outset that the Agreement is an integrated contract. Paragraph 19 of the Agreement states that "This Agreement, together with the documents and exhibits referred to herein, embodies the entire understanding among

---

[4] In its response brief, Hallmark appeared to concede that the district court should have applied California law. We do not need to decide whether Missouri's choice of law rules would require this Court to apply California law to the Asset Purchase Agreement because the result is the same regardless of which state law applies. Because Appellant did not contest the district court's application of Missouri law, we will focus our attention on the application of California law.

the parties and merges all prior discussions or communications among them, and no party shall be bound by any definitions, conditions, warranties, or representations other than as expressly stated in this Agreement . . . ." Because this is an integrated contract, "extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract." Pac. Gas and Elec. Co. v. G.W. Thomas Drayage & R. Co., 69 Cal.2d 33 (1968). However, in accordance with California law, the court must consider whether Mr. Lynn's affidavit advances an interpretation to which the Agreement is "reasonably susceptible."

Because the Agreement is not reasonably susceptible to Lynn's interpretation, we find that the district court correctly granted Hallmark's summary judgment motion. Under Section 2.1 of the Agreement, Appellant agreed to indemnify Patty Woodard for all "liabilities arising solely out of the business conducted by the seller prior to the closing." Liabilities based on the sale of defective products sold by Patty Woodard prior to closing clearly fall within this category. Further, Section 2.2 of the Agreement reiterates that the tax liability is the "sole exclusion to the generality" of the assumption of liability provision. The Agreement does not limit Appellants' liability in any other way. Taken together, these sections firmly support the conclusion that Mr. Lynn's interpretation of the contract is not reasonable.

Interpreting the Agreement under California law, we conclude that Appellant intended to assume all of Patty Woodard's prior liabilities which arose out of the business. See A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., 852 F.2d 493, 497 (9th Cir. 1988) (refusing to read alleged oral warranties in to an unambiguous contract). Because we find that the Agreement's assumption of liability provision is not ambiguous, we affirm the district court's conclusion that Appellant assumed any liability of Patty Woodard stemming from claims for defective products.

6

## C. Potential Liability

In general, a seller of a defective product to prevail on an implied indemnity theory, the seller must show: (1) a right to indemnity; (2) its own <u>potential liability</u> in the underlying action; (3) the reasonableness of the settlement amount; and (4) tender to the manufacturer the choice of approving the settlement or taking over the defense and agreeing to hold the seller harmless. <u>Acceptance Ins. Co. v. SDC, Inc.</u>, 952 F. Supp. 644, 646 (E.D. Mo. 1997) (emphasis added). However, a defendant who fails to tender the defense to a manufacturer must provide a showing of "actual damage" to sustain and indemnity suit. <u>See</u> <u>Elrac, Inc. v. Cruz</u>, 699 N.Y.S.2d 647 (1999).

Here, Appellant argues that failure to timely tender a defense should be treated as a failure to tender and thus that Hallmark needed to prove it was actually liable in the Reithmeyer suit to maintain an indemnity action. More specifically, Appellant asserts that the district court erred by not relying on <u>Dixon v. Fiat Roosevelt Motors, Inc.</u>, 509 P.2d 86, 90 (Wash. Ct. App. 1973) in which a Washington Court of Appeals concluded that an indemnitee had to prove it was actually liable in an indemnity action because its tender of the defense less than one month prior to trial did not give the indemnitor adequate notice to prepare for trial. Undisputed facts prove that Hallmark formally tendered the defense on September 25, 1996 and the Reithmeyer suit was schedule to go to trial on November 12, 1996. Because Hallmark tendered the defense approximately one and a half months prior to trial, Appellant argues that the untimely notice was tantamount to not having any notice at all and thus Hallmark must prove actual liability to recover in its indemnity action.

Like the district court, we are unpersuaded by Appellant's argument; therefore, we conclude that the district court did not err in refusing to consider the <u>Dixon</u> case. In <u>Dixon</u>, a car manufacturer, Fiat, sought indemnification from American Racing Equipment ("A.R.E.") because A.R.E. allegedly manufactured a defective wheel. On

October 7, 1969 a Complaint was filed against Fiat and Fiat tendered its defense to A.R.E. on October 24, 1969. Id. at 90. The trial court ordered an early trial which was held on November 10, 1969. The jury found against Fiat; thereafter, Fiat moved for summary judgment on his third-party complaint against A.R.E. for indemnification. Id.

The court found that Fiat had to prove that A.R.E.'s wheel was actually defective because tendering a defense less then one month before trial did not give A.R.E. adequate notice to prepare a defense. Id. The court stated that "Oral argument before this court indicated that a request for a continuance was denied by the trial court and a speedy trial was ordered so as to allow Dixon his day in court in light of his terminal illness." Id. Thus, "because of the accelerated trial date," the court concluded that A.R.E. was not provided an opportunity to prepare a sufficient defense. Id.

Unlike the Dixon case, the Reithmeyer suit was not proceeding at an accelerated pace, and Appellant did not suggest or make any efforts to secure a continuance. Although Hallmark formally tendered the defense a month and a half before trial, Appellant had notice of the suit in August 1996, more than two and a half months before trial. The Dixon case is readily distinguishable from the case sub judice; therefore, the district court did not err by refusing to follow Dixon.

Moreover, the district court's reliance on Acceptance Ins. Co. v. SDC, Inc., 952 F. Supp. 644 (E.D. Mo. 1997) to support its conclusion that Hallmark had satisfied the last element of its indemnity claim by timely tendering the defense was not misplaced. In Acceptance Insurance, the Acceptance Insurance Company ("AIC"), the indemnitee, settled a personal injury claim involving an allegedly defective boat seat casting. Id. at 645. SDC, Inc. ("SDC") manufactured the seat base involved in the accident. AIC sought to recover from SDC the cost of the settlement, plus costs, expenses, expert witness fees, and attorney's fees under an implied indemnification

theory.  Although AIC had tendered defense of the case to SDC one month prior to trial, the Acceptance Insurance court found that this was sufficient to satisfy the last element of an implied indemnity claim.  Id. at 646.  "With the trial date of June 26, 1995 glaring down, AIC's actions in settling the case were sound.  SDC's indolence in doing nothing was not.  Accordingly, the Court finds that the tender of the defense was timely."  Id. at 647.  Based on this finding, the Acceptance Insurance court allowed AIC to rest its indemnity action on potential and not actual liability.

We find that the district court properly relied on the Acceptance Insurance case to support its conclusion that Hallmark timely tendered the defense. As we discussed above, Appellant had more than the one month notice deemed acceptable by the Acceptance Insurance court.  Also, Appellant did not mention the untimeliness of the tender when it refused to take over the defense of the Reithmeyer suit.  Instead, Appellant asserted that it did not have to defend the suit because the Patty Woodard blouse was not dangerous or defective and was the not cause of the accident giving rise to the suit.  The district court stated that  "Lee-Thomas has not produced any evidence that it was somehow prejudiced by Hallmark's tender relatively late in the game."  We agree with this conclusion and accordingly find that the district court did not err by allowing Hallmark to maintain its indemnity action by proving it was potentially liable in the Reithmeyer suit.

**D. Litigation Expenses**

Appellant argues that the district court erred when it awarded Hallmark $7,448.18 in expert witness fees which allegedly were incurred before Hallmark tendered the defense of the Reithmeyer suit.  In awarding fees and costs, the district court permitted Hallmark to recover only the fees and costs incurred after September 26, 1996, the date on which Hallmark formally tendered the defense.  Appellant asserts that the district court erred by including an invoice for Hallmark's expert witness Dr. LeBlanc dated October 31, 1996 in the fees and costs award, because the

witness allegedly provided his services prior to the September 26, 1996 trigger date.

We do not need to consider Appellant's contention that the court erred in calculating costs because it raises this issue for the first time on appeal. See Alexander v. Pathfinder, Inc., 189 F.3d 735, 742 (8th Cir. 1999) ("We will not consider arguments raised for the first time on appeal."). Even if we were to consider the issue, Appellant failed to present any evidence that the district court abused its discretion in determining the amount of costs. Treece v. City of Little Rock, No. 97-1238, 1998 WL 66714, at *1 (8th Cir. Feb. 19, 1998) ("The district court has the discretion to determine the amount of the fees and costs, and we review the exercise of that discretion for abuse.").

Appellant does not present any evidence to substantiate its contention that Dr. LeBlanc's services were provided prior to September 26, 1996. Meanwhile, Hallmark presented evidence that although Dr. LeBlanc was initially contacted in March, 1996, almost all of Dr. LeBlanc's services were provided after the September 26th trigger date. Accordingly, we find that the district court did not abuse its discretion in calculating fees and costs.

## IV. Conclusion

For the foregoing reasons, the district court's order granting summary judgment and granting attorneys' fees and expenses is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.